Cynthia DAVIS *v.* DILLMEIER ENTERPRISES, INC.

97-360 956 S.W.2d 155

Supreme Court of Arkansas
Opinion delivered November 13, 1997

*Sexton & Fields, P.L.L.C.,* by: *William J. Kropp III,* for appellant.

*Gary W. Udouj,* for appellee.

DONALD L. CORBIN, Justice. Appellant Cynthia Davis appeals the judgment of the Sebastian County Circuit Court dismissing with prejudice her complaint against Appellee Dillmeier Enterprises, Inc., for discrimination in violation of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 to -108 (Supp. 1995). The trial court dismissed Appellant's complaint for lack of subject-matter jurisdiction, holding that Appellant's claim was covered by the Workers' Compensation Act, Ark. Code Ann. §§ 11-9-101 to -1001 (Repl. 1996). This case presents an issue of first impression requiring statutory interpretation; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(17)(i) & (vi). The sole issue raised by Appellant is whether an employee who is discriminated against based upon a disability resulting from a work-related injury may sue her employer under the Arkansas Civil Rights Act. We find that such suit is permissible, and we reverse.

The relevant facts, which are not in dispute, are set out in the complaint as follows. Appellant was employed by Appellee at its facility in Fort Smith beginning in September 1993. In October 1993 and also in April 1994, Appellant sustained bilateral carpal tunnel syndrome, which was caused by the rapid and repetitive motion in Appellant's work-related environment. Appellant's injuries were accepted as compensable, and she completed her rights under the workers' compensation laws by joint petition filed

with the Arkansas Workers' Compensation Commission on November 28, 1995. After her injuries were accepted as compensable, Appellant was placed under active treatment from two physicians and underwent epineurolysis and decompression for her injuries in both March and May 1995. During the time she was under active treatment, Appellant continued working for Appellee and was able to perform the essential functions of her job, with or without reasonable accommodations, under limited duties or restrictions. Specifically, in a status report dated June 21, 1995, Appellant was instructed by her primary physician to wear a splint, sling, or brace and was restricted from performing any repetitive motion and any gripping, pulling, pushing, or lifting of items weighing in excess of zero pounds for a period of four weeks. Similarly, Appellant was advised by Dr. Kenneth Rosenzweig on that same date as follows:

> I would like for her to continue her rehab[ilitation] efforts and try some light duty job if available — that should be with her padded gloves on, no excessive pressure in the palm of her hand, and avoiding any heavy gripping, pushing, pulling and/or repetition for at least another month and at that time, things should be well enough to go back to her regular job. This should be on a trial basis and if she is unable to tolerate it despite surgical repair, then she may be forced to do something less intensive.

Two months later, on August 22, 1995, Appellant was given a full and complete release from treatment and rehabilitation by both physicians, with noted permanent restrictions. Particularly, Appellant was advised to refrain from any repetitive motion of any activity seventy-one degrees, to continue restrictive activities, and to pursue job rotation to avoid any overuse in any one particular mode. Appellant was assigned a rating of five percent permanent physical impairment in each upper extremity. On that same date, after having obtained her release from treatment, Appellant reported to work, where she was immediately terminated from employment by Appellee.

As a result of her termination, Appellant brought an action against Appellee for discrimination based upon a physical disability, in violation of the Arkansas Civil Rights Act. Appellant asserted in her complaint that Appellee terminated her despite the

fact that she had been previously performing the essential functions of her job and despite the fact that her permanent impairments were less restrictive and less severe than those initially indicated by her treating physicians. Appellant claimed damages in the form of lost wages, mental anguish, and loss of dignity. She also asked for punitive damages in the amount of $200,000.

Appellee filed a motion to dismiss Appellant's complaint on the ground that exclusive jurisdiction of her claim was clearly vested in the Arkansas Workers' Compensation Commission, specifically pursuant to section 11-9-505(a)(1). After hearing argument from both sides, the trial court dismissed with prejudice Appellant's complaint, reasoning that it was the General Assembly's intent that the remedies provided under the Workers' Compensation Act were to be exclusive.

On appeal, Appellant argues that her claim is cognizable under the Arkansas Civil Rights Act. She contends that workers who are discriminated against because of a disability from a work-related injury are not entitled to less protection under the law than are workers who are disabled by other means. She contends further that the Workers' Compensation Act was never intended to be a vehicle for protecting a worker's civil rights, and that the damages available under the Arkansas Civil Rights Act are more complete than those offered under the Workers' Compensation Act. In support of her argument, Appellant relies on this court's holding in *Malone v. Trans-States Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996).

In *Malone*, the appellant had filed a complaint in circuit court against his employer for retaliatory discharge under the Workers' Compensation Act and for discrimination in violation of the Arkansas Civil Rights Act. The trial court dismissed the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted. There, as in the present case, the appellant argued that his civil rights claim was cognizable in circuit court and that the trial court had thus erred in dismissing with prejudice his complaint for lack of subject-matter jurisdiction. This court did not directly address the merits of that argument, but nonetheless held that the complaint should have been

dismissed without prejudice, to allow the appellant to amend his complaint to include the specific facts, as opposed to bare conclusions of law, in support of his claim. This court stated:

> While we are somewhat sympathetic to appellant's contention that he has asserted two distinct causes of action based on two distinct statutes, on this limited record we cannot fully discuss the merits of appellant's arguments for reversal of the trial court's rulings regarding subject-matter jurisdiction. *Suffice it to say that because appellant has asserted a cause of action in circuit court based in part on the Arkansas Civil Rights Act of 1993, we reverse that part of the order dismissing the complaint for lack of subject-matter jurisdiction.*

*Id.* at 386-87, 926 S.W.2d at 662 (emphasis added). It is this language that Appellant relies on in support of her assertion that her claim is actionable in circuit court. Additionally, Appellant points to a concurring opinion in *Malone*. It was stated unequivocally that the exclusive-remedy doctrine of the Workers' Compensation Act "in no way conflicts with or bars a properly established or alleged claim under the Civil Rights Act." *Id.* at 387-88, 926 S.W.2d at 662.

Appellee, on the other hand, asserts that Appellant's claim is limited to the remedy provided under section 11-9-505, which addresses an employee's rights when the employer refuses to return the injured employee to work. Appellee asserts further that while the Arkansas Civil Rights Act generally addresses the rights of disabled persons to obtain and hold employment, the Workers' Compensation Act specifically addresses the rights of employees who were injured on the job to return to work. Accordingly, Appellee asserts that the specific remedies provided in the Workers' Compensation Act must prevail over the general remedies available under the Arkansas Civil Rights Act.

In response to Appellee's argument, Appellant contends that the issue in this case is not that Appellee refused to return her to work after her injury; rather, she contends that the action filed in circuit court under the Arkansas Civil Rights Act is a separate and distinct cause of action based upon Appellee's decision to terminate her because of her physical disability. Appellant contends that this is not a case of Appellee's refusal to return her to work, because she had been allowed to return to work after her injuries,

during the time she was receiving physical rehabilitation and was under medical restrictions.

The initial question then is whether this case is one of discrimination on the part of the employer in terminating an employee based upon her disability or, rather, whether it is one of the employer's refusal to return the employee to work after having suffered a work-related injury. Should we determine that this case presents an issue of employer discrimination, we must next determine whether there is an adequate remedy for such discrimination available to Appellant under the Workers' Compensation Act. If, on the other hand, we should determine that this case concerns the employer's refusal to return the injured employee to work, we should affirm the trial court's dismissal with prejudice of Appellant's complaint, as her exclusive remedy would be found in section 11-9-505 of the Act. For the reasons set out below, we conclude that this case presents an issue of employer discrimination, rather than a situation where the employer has refused to return the injured employee to work.

Section 16-123-107(a) of the Arkansas Civil Rights Act of 1993 provides in pertinent part:

> The right of an otherwise qualified person to be free from discrimination because of race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right. This right shall include, but not be limited to:
>
> (1) The right to obtain and hold employment without discrimination[.]

As previously noted, the issue presented by this appeal is one of first impression in this State. As such, we look to cases from other jurisdictions for guidance. The Supreme Court of Washington recognized that, in addition to obtaining workers' compensation benefits, an employee has the right to file suit against the employer for discrimination based upon a physical disability. *Reese v. Sears, Roebuck & Co.*, 731 P.2d 497 (Wash. 1987), *overruled on other grounds by Phillips v. Seattle*, 766 P.2d 1099 (Wash. 1989). The court found that there was no conflict between the Industrial Insurance Act ("IIA"), Washington's workers' compensation act,

and the Law Against Discrimination, the state's civil rights act. The court reasoned that under the workers' compensation law, the appellant–employees sought recovery for their out-of-pocket costs attributed to specific physical injuries arising out of their employment, but that, in contrast, under the civil rights law, the appellant–employees claimed that they were injured, "not by the physical workplace injuries that gave rise to their respective disabilities, but by a particular employer action taken months after they became disabled." *Id.* at 502. The court held:

> It is the *employer response* to the disabled worker that is at issue. Appellants' claimed injuries in this action turn *exclusively* on the employers' deliberate behavior. For purposes of the Law Against Discrimination, it does not matter how the handicap arose; only the employer's response to the handicap matters.

*Id.* at 502–03. In concluding that there was no conflict between the two statutory schemes, and thus no need to choose between giving full effect to either act, the court stated:

> In sum, we hold that appellant employees' discrimination actions are not barred by the IIA exclusive remedy provision. Appellants claim to have suffered two separate injuries — a workplace physical injury and a subsequent injury arising from the employers' alleged handicap discrimination. Because the injuries (1) are of a different nature, (2) must arise at different times in the employee's work history, and (3) require different causal factors (an IIA claim is indifferent to employer fault, a discrimination claim requires such fault), the two injuries cannot be "the same injury." Since the Legislature intended the IIA and the Law Against Discrimination to address the two separate injuries alleged by the appellants, no conflict exists between the two statutes in question.

*Id.* at 503.

Similarly, in *Cox v. Glazer Steel Corp.*, 606 So.2d 518 (La. 1992), the Supreme Court of Louisiana held that an employee who had previously settled a claim for an industrial accident could sue the former employer for discrimination against the handicapped. The court applied the same reasoning expressed by the Washington Supreme Court that the two statutory schemes have different bases: Specifically, the workers' compensation principle

excludes the concept of employer fault, but "the Civil Rights Act for Handicapped Persons is fault-based legislation, intended to prevent discrimination, prejudice and intolerance." *Id.* at 519-20. The court went on to conclude that the purposes of the two laws were also different, stating:

> The worker's compensation law provides compensation for accidental industrial injury or death. Guaranteeing civil job rights for the handicapped is intended to assure the handicapped equal employment opportunity. The two pieces of legislation are directed at distinct problems.

*Id.* at 520. It should be noted that the Louisiana decision also turned on the fact that its workers' compensation act specifically provides that it does not bar other statutory causes of action. That distinction notwithstanding, we find the reasoning expressed by the court to be persuasive. We turn now to a related decision from this court.

█ In *Travelers Ins. Co. v. Smith*, 329 Ark. 336, 947 S.W.2d 382 (1997), we determined that an action filed in circuit court was not barred by the exclusive-remedy provision of the Workers' Compensation Act where the injury was not compensable and was beyond the scope of coverage of the Act. The facts of that case were that the plaintiff's deceased husband was killed in a one-vehicle trucking accident while in the course of his employment with Gerald Johnson Trucking Company. The plaintiff brought suit in circuit court against the insurance company and its claims adjuster on the grounds that the adjuster had made misrepresentations to her causing her to refrain from embalming her husband's body and proceeding with the funeral. She claimed that she had experienced severe and extreme mental anguish as a result of those misrepresentations. The insurance company and its adjuster argued that the plaintiff's claim was barred by the exclusive-remedy provision of the Act. We held that, "we cannot construe Anna Smith's claims of misrepresentation and extreme mental anguish to be an aggravation of an initial, compensable injury suffered by her husband." *Id.* at 342, 947 S.W.2d at 385. We then acknowledged that the pertinent issue was whether the lack of a remedy under the Act necessarily answered the question of whether the circuit court lacked jurisdiction to hear the plaintiff's claim. In an

attempt to answer that question, we turned to the writings of Professor Larson for guidance:

> If . . . the exclusiveness defense is a "part of the *quid pro quo* by which the sacrifices and gains of employees and employers are to some extent put in balance," it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except when something of value has been put in their place.

*Travelers*, 329 Ark. at 343, 947 S.W.2d at 385-86 (quoting 6 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 65.40, at 12-55 (1997) (footnotes omitted)). We concluded that permitting the plaintiff's claims in circuit court was entirely consistent with Professor Larson's teachings:

> If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is for recovery for physical injury or death, . . . the action should be barred even if it can be cast in the form of a normally non-physical tort.

*Id.* at 344, 947 S.W.2d at 386 (quoting 6 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 68.34(a), at 13-180 (1997) (footnote omitted)). Thus, from the decision in *Travelers*, it is clear that in determining whether an action involving a work-related injury may be filed in circuit court, an important consideration is whether the Workers' Compensation Act provides a remedy to the plaintiff.

 In the case at hand, we conclude that there is no such remedy available to Appellant under the Act for her claim of injury resulting from her termination from employment with Appellee. Neither section 11-9-505 nor section 11-9-107 provide a remedy to Appellant in this instance. Section 11-9-505(a)(1) provides:

> Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of such refusal, for a period not exceeding one (1) year.

We construe the plain language of that provision as providing benefits *in addition* to those workers' compensation benefits already being received by the claimant. Such construction is evident, as the statute provides to the injured employee the *difference* between the compensation benefits being received and the average weekly wages lost during the period of refusal. Clearly, the combination of compensation benefits and additional benefits are designed to pay the employee a total amount equal to his or her average salary, thus making the employee whole. From the circumstances presented in this case, Appellant would not qualify for additional benefits under section 11-9-505 because she is no longer receiving any compensation benefits for her injury.

■ Moreover, the facts of this case do not describe a situation where the employer has refused to return the injured employee to work. Appellant had in fact already been returned to work during the time that she was receiving medical treatment and compensation benefits. It was only upon Appellant's reporting to work after having been released from treatment, but having sustained a permanent impairment to both upper extremities, that Appellee terminated her. Appellant's termination thus cannot be viewed as a refusal by Appellee to return her to work; rather, it can be viewed only as a termination. Accordingly, the benefits contemplated by section 11-9-505 do not offer this Appellant any remedy for her injuries.

■ Similarly, section 11-9-107, which provides for administrative and criminal penalties against an employer who engages in discrimination, does not provide a remedy to Appellant. Section 11-9-107 was intended by the legislature to be a remedy for willful discrimination by the employer done in retaliation for the

employee's having sought compensation under the Act. That section provides in pertinent part:

> (a)(1) Any employer who willfully discriminates in regard to the hiring or tenure of work or any term or condition of work of any individual *on account of the individual's claim for benefits under this chapter*, or who in any manner obstructs or impedes the filing of claims for benefits under this chapter, shall be subject to a fine of up to ten thousand dollars ($10,000) as determined by the Workers' Compensation Commission.

> (2) This fine shall be payable to the Second Injury Trust Fund and paid by the employer and not by the carrier. [Emphasis added.]

Section 11-9-107 was amended by the legislature in 1993 in order to preserve the exclusive remedy of the Workers' Compensation Act by eliminating the common-law remedies for retaliatory or wrongful discharge. *See* section 11-9-107(e). In the present case, Appellant does not allege, nor has Appellee contended, that she was fired in retaliation for having sought workers' compensation benefits. To the contrary, the information provided in the complaint demonstrates that Appellant's injuries were accepted as compensable by Appellee and that benefits were completed by joint petition to the Commission. Thus, any remedy offered by section 11-9-107 is inapplicable to the facts of this case.

In sum, we conclude that there is no remedy under the Workers' Compensation Act for an employee who is terminated from his or her job on the basis of a disability. Thus, the exclusive-remedy provision of the Act does not preclude Appellant from bringing an action under the Arkansas Civil Rights Act based upon Appellee's alleged discrimination in terminating her on the bases of her permanent restrictions and impairments. In this respect, we agree with the reasoning espoused by the Washington Supreme Court that it matters not how the disability came about; rather, the focus should be upon the subsequent deliberate action by the employer in terminating the employee based upon a disability. Additionally, we are persuaded that the rights and remedies provided by both Acts are considerably different and serve to fulfill different purposes. Appellant has alleged two separate injuries — one being a work-related physical injury, for which she has

received workers' compensation benefits, and one being a subsequent nonphysical injury arising from Appellee's action in terminating her based upon her physical disability. The first injury is exclusively cognizable under the Workers' Compensation Act, while the subsequent injury is of the type envisioned by the Arkansas Civil Rights Act of 1993.

■ Accordingly, we reverse the decision of the trial court dismissing with prejudice Appellant's complaint, and we remand this case for further proceedings. We note that by our holding today, we make no decision as to whether Appellant has established that she has a "disability" within the meaning of that term as used in the Arkansas Civil Rights Act, section 16-123-102(3). Nor do we reach the issue of the reasons for Appellant's termination from her employment with Appellee. We hold only that Appellant may proceed with her claim under the Arkansas Civil Rights Act.

Reversed and remanded.

NEWBERN and BROWN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The majority opinion runs afoul of the exclusive-remedy provision of the Workers' Compensation Act. That provision makes no exception for a claim under the Arkansas Civil Rights Act ("ACRA") based on a disability resulting from a compensable work-related injury. The majority's analysis, based in large part on decisions in jurisdictions where the statutes differ from the Arkansas Workers' Compensation Act, contains several flaws that cause it to ignore the clear command of the General Assembly.

Ms. Davis and the majority rely on the holding of *Malone v. Trans-States Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996), which reversed the dismissal of a discrimination complaint cognizable under the ACRA. The complaint had been dismissed at the trial level for lack of subject-matter jurisdiction. We did not discuss the merits of the claim, but held that complaints based on the ACRA fall within circuit court jurisdiction. Some reliance is also placed upon a concurring opinion in the *Malone* case which stated that the exclusive-remedy doctrine of the Workers' Compensation

Act "in no way conflicts with or bars a properly established or alleged claim under the Civil Rights Act." *Id.* at 387-88, 926 S.W.2d at 662 (Glaze, J., concurring). Even if that statement had been an *obiter dictum* found in the majority opinion in the *Malone* case, it would hardly have answered the question presented here.

Our Workers' Compensation Act provides a remedy for an employee such as Ms. Davis. Arkansas Code Ann. § 11-9-505(a)(1) (Repl. 1996) provides:

> Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of such refusal, for a period not exceeding one (1) year.

Refusal to return an injured employee to suitable work is covered by that section regardless of the reason of the employer for doing so. The law thus provides a remedy for an employee who is discriminated against due to her injury, and the General Assembly has made that remedy exclusive. "The . . . remedies granted to an employee . . . on account of injury . . . shall be exclusive of all other rights and remedies of the employee . . . ." Ark. Code Ann. § 11-9-105(a) (Repl. 1996).

It might be argued that Ms. Davis does not fit within the situation described in section 11-9-105(a) because she was returned to work during her healing period but was dismissed after the permanent restrictions on her activities were made known. Surely, however, we would not render a decision that would discourage employers from retaining injured employees at least until the extent of disability is finally determined.

In *Reese v. Sears, Roebuck & Co*, 731 P.2d 497 (Wash. 1987), *overruled on other grounds by Phillips v. Seattle*, 766 P.2d 1099 (Wash. 1989), cited by the majority opinion, the Supreme Court of Washington held that the Industrial Insurance Act, Washington's workers' compensation act, and the Law Against Discrimination, the State's civil rights act, did not conflict. The Court concluded

that the Washington legislature intended expressly to preclude the possibility that discriminatory actions would be protected from remediation because of earlier enacted laws. There is no provision in the ACRA indicating it was intended to trump a provision such as § 11-9-105(a).

In *Cox v. Glazer Steel Corp.*, 606 So.2d 518 (La. 1992), the Louisiana Supreme Court noted, as did the Washington court in the *Reese* case, that the civil rights law and the workers' compensation law were meant to remedy different injuries. While that may be so, it does not answer § 11-9-105(a). A Louisiana statute cited in the *Cox* opinion provided, "Nothing in this Chapter [Louisiana Workers' Compensation Act] shall affect the liability of the employer, . . . under any other statute or the liability, civil or criminal, resulting from an intentional act." LSA-R.S. 23:1032(B). The Louisiana workers' compensation law is simply not exclusive of other statutory remedies, and that was the holding of the case.

The majority also relies on *Travelers Ins. Co. v. Smith*, 329 Ark. 336, 947 S.W.2d 382 (1997), where we held that a factor in determining whether the exclusive-remedy doctrine barred the action was whether the Workers' Compensation Act provided a remedy for the injury at issue. In that case, the claimant, unlike Ms. Davis, was not an injured employee and had no remedy under the Workers' Compensation Act. It is of no precedential value here.

The majority concludes that there is no workers' compensation remedy available to Ms. Davis by construing § 11-9-505 to mean that a claimant must be currently receiving workers' compensation benefits to qualify for additional benefits under this section. I do not agree. The section says that an employer who refuses to return an employee to work "shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost *during the period of such refusal*." (Emphasis supplied.) In this instance, the benefits received "during the period of such refusal" would be zero to be subtracted from the average weekly wages lost, giving Ms. Davis the whole sum to be received as the difference for one year.

Ms. Davis was dismissed upon presentment of her permanent restrictions. She can pursue a remedy under § 11-9-505 by filing a workers' compensation claim and can also petition under § 11-9-107 for her employer to be penalized if she can prove discrimination. From the penalty Ms. Davis can collect attorney's fees.

Under §11-9-505(a)(1) Ms. Davis must prove (1) by a preponderance of the evidence that she sustained a compensable injury; (2) that suitable employment within her physical and mental limitations is available with the employer; (3) that the employer has refused to return her to work; and (4) that the employer's refusal to return her to work is without reasonable cause. *Torrey v. City of Fort Smith*, 55 Ark. App. 226, 230, 934 S.W.2d 237, 239 (1996). In this case, Ms. Davis has alleged facts in support of each of the requirements.

Section 11-9-105 states that the remedies granted to an employee subject to the provisions of the workers' compensation chapter shall be "exclusive of all other rights and remedies of the employee." This Court has previously held that "other statutes must yield to the Workers' Compensation Act because it is in the interest of the public policy to give that act priority as an exclusive remedy." *Cherry v. Tanda*, 327 Ark. 600, 616, 940 S.W.2d 457, 462 (1997)(quoting from *Helms v. Southern Farm Bureau Casualty*, 281 Ark. 450, 664 S.W.2d 870 (1984)).

I respectfully dissent.

BROWN, J., joins this dissent.