CONGO STOVE, FIREPLACE & PATIO, INC., and
California Compensation Insurance Company *v.*
Edward RICKENBACKER

CA 01-1390                                          74 S.W.3d 238

Court of Appeals of Arkansas
Division III
Opinion delivered May 15, 2002
[Petition for rehearing denied June 19, 2002]

*Hart & Wren, L.L.P.*, by: *Neal L. Hart*, for appellant.

*Dale Grady*, for appellee.

WENDELL L. GRIFFEN, Judge. Appellants, Congo Stove, Fireplace & Patio, Inc., and California Compensation Insurance Co., challenge a decision by the Workers' Compensa-

tion Commission that found appellee Edward Rickenbacker was entitled to benefits pursuant to Arkansas Code Annotated section 11-9-505(a) (Repl. 2002). Appellants contend that the decision is contrary to existing statutory and case law and that it is not supported by substantial evidence. We hold that substantial evidence supports the Commission's decision that appellee proved entitlement to compensation benefits. Thus, we affirm.

*Factual and Procedural History*

While working in the employ of appellants, appellee sustained an admittedly compensable injury to his left shoulder on February 5, 2000. Appellee was subsequently diagnosed with left shoulder strain. The parties stipulated that the injury was compensable, and that appellants paid appellee temporary total disability benefits and medical benefits through April 13, 2000, except for two days that appellee tried to work in February.

On February 15, 2000, appellee's physician released him to work with restrictions of no heavy lifting or heavy use of the upper extremity. Appellee reported to work on that date and was assigned to feather-dust furniture and sweep the floor. He testified that sweeping the floor aggravated his shoulder and that he could not physically continue to perform the work after February 16, 2000. Appellee explained that sweeping the floor involved pushing a broom, which required him to use his left shoulder. He testified that his job duties also required him to move barbecue grills, which also hurt his shoulder. On cross-examination, appellee acknowledged that when he made his employer aware of the difficulties he was experiencing, his employer told him to just sweep around everything. Following the second day of his return to work appellee contacted his employer and stated that he was still in pain and needed to go back to the doctor. Appellee did not return to work and appellants continued to pay temporary total disability benefits.

On March 9, 2000, appellee was seen by Dr. Charles Pearce, an orthopedic surgeon, who diagnosed appellee with left trapezius strain with trigger point and a possible partial tear of the left deltoid. Dr. Pearce ordered an MRI, and indicated in a medical

note that appellee was unable to work. An MRI was performed on March 16, 2000, which revealed a mild hypertrophic change of appellee's acromioclavicular joint. Following an evaluation conducted on that same date, Dr. Pearce increased appellee's medication and told appellee that he was still unable to return to work. Appellee returned to Dr. Pearce on April 13, 2000, and was given a release to return to work with restrictions of no lifting, pushing, or pulling in excess of twenty-five pounds. The record indicates that appellants received appellee's return to work authorizations, release from work authorizations, and restricted work authorizations. In addition, appellants contracted the services of an independent registered nurse to manage appellee's case.

Appellants continued to pay temporary total disability benefits to appellee until April 13, 2000, when Dr. Pearce authorized appellee to return to work with restrictions. On April 14, 2000, appellee attempted to return to work. However, he was told that he no longer had a job because he failed to maintain contact with his employer. The next day, appellee went to the Employment Security Division to seek employment benefits. He later moved to Missouri, and worked at a machine shop from May 9, 2000, until July 31, 2000, when he voluntarily quit and returned to Arkansas. On September 6, 2000, appellee found a job as a truck driver.

Appellee subsequently filed a claim for workers' compensation contending that he was entitled to additional temporary total benefits from April 14, 2000, through May 8, 2000; that he was entitled to temporary partial disability benefits from May 9, 2000, through July 31, 2000; that he was entitled to relief under Arkansas Code Annotated section 11-9-505(a); and that he was entitled to a change of physician or an independent medical evaluation.

Following a hearing, an administrative law judge (ALJ) found 1) that appellee failed to prove entitlement to any additional benefits after April 13, 2000; 2) that appellee was not entitled to any benefits pursuant to section 11-9-505(a); and 3) that appellee was not entitled to a physician or an independent medical evaluation. Appellee appealed only that portion of the ALJ's decision that found that he was not entitled to benefits for temporary total disa-

bility pursuant to section 11-9-505(a). Following its *de novo* review, the Commission found that appellee was not entitled to benefits for temporary total disability subsequent to April 13, 2000. However, the Commission determined that appellee was entitled to an award of benefits pursuant to section 11-9-505(a). This appeal followed.

## Standard of Review

When reviewing decisions from the Commission, we view all evidence in the light most favorable to the results reached by the Commission. *See Swift-Eckrich, Inc. v. Brock*, 63 Ark. App. 118, 975 S.W.2d 857 (1998). The critical factor is not whether we would have reached a different result than the Commission or whether the evidence supports a contrary finding. *See id.* Rather, the findings of the Commission are affirmed when we determine that the findings are supported by substantial evidence, *i.e.*, evidence upon which reasonable minds could have reached the same conclusion as the Commission. *See id.*

## Entitlement to Additional Benefits

Our workers' compensation laws serve to provide disability benefits to legitimately injured workers, to pay reasonable and necessary medical expenses, and to return the worker to the workplace. *See Torrey v. City of Forth Smith*, 55 Ark. App. 226, 934 S.W.2d 237 (1996).

Arkansas Code Annotated section 11-9-505 reads as follows:

> (a)(1) Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the Workers' Compensation Commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of the refusal, for a period not exceeding one (1) year.

We reviewed section 505(a)(1) in *Torrey, supra,* and held that before section 505(a)(1) applies, the following criteria must be satisfied. First, the employee must prove that he sustained a compensable injury. Second, he must demonstrate that there is suitable employment within his physical and mental limitations with his employer. Next, he must prove that the employer has refused to return him to work. Last, he must demonstrate that the employer's refusal is without reasonable cause. *See Torrey, supra.*

In *Davis v. Dillmeier Enterprises, Inc.,* 330 Ark. 545, 956 S.W.2d 155 (1997), our supreme court analyzed subsection 505(a)(1) in the context of an Arkansas Civil Rights Act claim regarding disability. The claimant, Davis, had returned to work while she was receiving medical treatment and was terminated only after she had entered into a joint petition that ended her claim for workers' compensation. In considering whether Davis had a workers' compensation claim or a discrimination claim based on a violation of the Arkansas Civil Rights Act, the *Davis* court held as follows:

> [W]e conclude that there is no remedy under the Workers' Compensation Act for an employee who is terminated from his or her job on the basis of a disability. Thus, the exclusive-remedy provision of the Act does not preclude Appellant from bringing an action under the Arkansas Civil Rights Act based upon Appellee's alleged discrimination in terminating her on the bases of her permanent restrictions and impairments.

*Davis,* 330 Ark. at 556, 956 S.W.2d at 160-61.

In the present case, the Commission specifically found that appellee was not entitled to benefits for temporary total disability after April 13, 2000. It based its finding on appellee's own testimony that he had the capacity to work as of April 13, 2000, when he was released to light duty work by Dr. Pearce. However, the Commission found that appellee was entitled to an award of benefits pursuant to section 505(a)(1) based on its determination that appellee established each element outlined in *Torrey, supra.*

Appellants invite us to apply the reasoning espoused in *Davis, supra,* and to hold that the Commission's decision is inconsistent with case law. We decline to do so and hold that substantial evi-

dence supports the Commission's finding that appellee proved entitlement to benefits based on the factors outlined in *Torrey*.

We begin by noting that the facts in the present case are distinguishable from those presented in *Davis, supra. Davis* involves the applicability of subsection 505(a)(1) as it relates to the Arkansas Civil Rights Act. Because appellee was not pursuing a discrimination case, the Commission properly analyzed the case at bar using *Torrey, supra.*

We agree with the Commission that appellee met the *Torrey* factors. Appellee sustained a shoulder injury, which was accepted as compensable. The employer does not deny that it had suitable employment within appellee's physical and mental limitations available for appellee. Nor does the employer deny that it refused to return appellee to work. After finding that appellee received benefits throughout the pertinent period of time, that appellee's physician had taken appellee off work until April 13, and that an independent nurse who was hired by appellants was aware of theses facts, the Commission concluded that the employer terminated appellee without reasonable cause. Because a reasonable person could agree with the Commission's conclusion, substantial evidence supports the Commission's finding that appellee met the *Torrey* requirements. We affirm.

VAUGHT and BAKER, JJ., agree.