BRYANT SCHOOL DISTRICT and
Risk Management Resources,
Appellants

v.

Walter A. AYLOR and Second
Injury Fund, Appellees.

No. CA 10–1011.

Court of Appeals of Arkansas.

March 2, 2011.

Melissa Faye Wood, Little Rock, for appellant.

John Mark White, Bryant, for appellee.

RAYMOND R. ABRAMSON, Judge.

During his employment with the Bryant School District, Walter Aylor had two, separate work-related injuries—one to his right shoulder and one to his left upper arm. The District accepted these injuries as compensable and paid benefits accordingly. In addition, the District accepted a 2% body-as-a-whole rating for the right shoulder and a 5% left-arm, upper-extremity rating. Aylor eventually sought, among other things not pertinent to this appeal, additional medical benefits for his left-arm injury and benefits pursuant to Arkansas Code Annotated section 11–9–505(a) (Repl.2002). The Commission held that Aylor's claim was timely, that Aylor was entitled to additional medical benefits

for his left-arm injury, and that Aylor was not entitled to any benefits under section 11–9–505(a). The District appeals and Aylor cross-appeals. We affirm in part and reverse and remand in part.

When a party is challenging the sufficiency of the evidence in a workers' compensation case, we view the evidence in the light most favorable to the Commission's findings. *Pharmerica v. Seratt,* 103 Ark.App. 9, 11, 285 S.W.3d 699, 701 (2008). We affirm if substantial evidence—evidence that a reasonable mind might accept as adequate to support a conclusion—supports the Commission's decision. *Id.* The question is not whether we might have reached a different conclusion than the Commission if we had sat as the trier-of-fact or heard the case *de novo. Gaither Appliance v. Stewart,* 103 Ark.App. 276, 277, 288 S.W.3d 690, 691–92 (2008). Instead, we will not reverse unless we are convinced that fair-minded persons, with the same facts before them, could not have reached the Commission's conclusion. *Id.* at 277, 288 S.W.3d at 692.

### *Statute of Limitations*

"In cases in which any compensation, including disability or medical, has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the commission within one (1) year from the date of the last payment of compensation or two (2) years from the date of the injury, whichever is greater." Ark.Code Ann. § 11–9–702(b)(1) (Supp.2009). The provision of medical services constitutes "payment of compensation" under the statute. *Kent v. Single Source Transp., Inc.,* 103 Ark.App. 151, 156, 287 S.W.3d 619, 623 (2008). "[I]t is the furnishing of medical services, not the payment thereof, which constitutes the payment of compensation." *Id.* "A claim for additional compensation must specifi-

cally state that it is a claim for additional compensation. Documents which do not specifically request additional benefits shall not be considered a claim for additional compensation." Ark.Code Ann. § 11–9–702(c). The filing of a claim for additional benefits tolls the running of the statute of limitations. *Kent,* 103 Ark.App. at 156, 287 S.W.3d at 622.

The parties stipulated that Aylor injured his upper left arm at work on August 16, 2006. Aylor began treating with Dr. Nguyen and continued to do so over the next few years. Indeed, Aylor saw Dr. Nguyen on April 30, 2008 for a "flare[ ] up" of his right-shoulder and left-arm problems stemming from his two work-related injuries. According to the statute and case law, Aylor then had one year, until April 30, 2009, to file his claim for additional compensation. Ark.Code Ann. § 11–9–702(b)(1). In his February 2009 responses to the prehearing questionnaire, Aylor stated that he was seeking benefits pursuant to section 11–9–505(a), wage-loss benefits in excess of his anatomical impairment, additional TTD benefits, and attorney's fees. Aylor also specifically reserved the issue of additional medical treatment. Although the ALJ made no mention of Aylor making a claim for additional medical benefits in its April 14, 2009 prehearing order, it reiterated that the issues to be litigated were Aylor's entitlement to additional TTD benefits, section 11–9–505(a) benefits, wage-loss benefits, and attorney's fees. It was not until the July 2009 hearing, however, that Aylor officially sought additional medical treatment for his left-arm injury.

We agree with the Commission that the ALJ's April 14, 2009 prehearing order, which stated that Aylor was seeking, among other things, *additional* TTD benefits and wage-loss benefits *in excess of* his already established permanent impair-

ment rating, tolled the running of the statute of limitations. This document made it clear that Aylor was making a claim for additional benefits. Thus, following section 11–9–702(b)(1) and (c), Aylor's claims, including his eventual claim for additional medical treatment for his left-arm injury, were timely. We affirm the Commission on this point.

### Additional Medical Benefits

■ "The employer shall promptly provide for an injured employee such medical ... services ... as may be reasonably necessary in connection with the injury received by the employee." Ark.Code Ann. § 11–9–508(a) (Supp.2009). Below, Aylor had the burden of proving by a preponderance of the evidence that the additional medical services he is requesting for his left-arm injury are both reasonable and necessary. *Amaya v. Newberry's 3N Mill*, 102 Ark.App. 119, 126–27, 282 S.W.3d 269, 275 (2008). What treatment is reasonable and necessary under the terms of the statute is a question of fact for the Commission to decide. *Id.* at 127, 282 S.W.3d at 275.

■ As mentioned above, the District accepted Aylor's left-arm injury as compensable and paid benefits. Dr. Nguyen ultimately performed a left-distal-biceps repair in October 2006. Aylor reached maximum medical improvement in January 2007, and Dr. Nguyen assigned him a 5% left-upper-extremity impairment rating. Even after he reached maximum medical improvement, Aylor continued to seek treatment from Dr. Nguyen. In an August 2007 note, Dr. Nguyen wrote that "[a]t this point I think he has some ... left biceps tendinosis/partial tearing." And in a September 2007 letter to a workers' compensation specialist, Dr. Nguyen wrote, in regard to both of Aylor's work injuries, that "[Aylor] will have flare-ups

from time to time that require anti-inflammatories and periodic resting." Aylor started a new job at Home Depot in October 2007. But in April 2008, Aylor presented to Dr. Nguyen, who wrote that Aylor's right-shoulder and left-arm problems had "flared up over the past month." Dr. Nguyen made a similar notation in a June 2009 note, stating again that Aylor's left-arm problems had "flared up over the past couple of months with severe excruciating pain running up to the left shoulder."

■ "[W]hen an accidental injury aggravates a prior one, the one in whose employ the second injury occurs is liable for all of the consequences naturally flowing from that incident; and it is only when the employee suffers merely a recurrence of a former injury without an intervening cause that the employer at the time of the initial injury is liable for the recurring disability." *Bearden Lumber Co. v. Bond,* 7 Ark.App. 65, 70, 644 S.W.2d 321, 324 (1983). Here, the Commission found that Aylor sustained a recurrence of his previous left-arm injury rather than an aggravation or an entirely new injury. Substantial evidence supports the Commission's conclusion. Dr. Nguyen predicted that Aylor would have flare-ups of his left-arm injury. And Dr. Nguyen's April 2008 and June 2009 notes characterized Aylor's ongoing left-arm problems as a recurrence, rather than a new, independent injury or an aggravation. In short, we affirm the Commission's grant of additional medical benefits for Aylor's recurring left-arm problems.

### Section 11–9–505(a)(1) Benefits

■ "Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the

Workers' Compensation Commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of the refusal, for a period not exceeding one (1) year." Ark.Code Ann. § 11–9–505(a)(1). Before this section applies, the employee must prove (1) that he sustained a compensable injury, (2) that there is suitable employment within his physical and mental limitations with his employer, (3) that the employer has refused to return him to work, and (4) that the employer's refusal is without reasonable cause. *Congo Stove, Fireplace & Patio, Inc. v. Rickenbacker,* 77 Ark.App. 346, 351, 74 S.W.3d 238, 241 (2002).

■ Aylor returned to his maintenance and bus-driving job with the District in January 2007. Beginning in the summer, Dr. Nguyen assigned him lifting restrictions—he was not to lift more than 30 pounds starting in July 2007 and was not to lift more than 40 pounds starting in November 2007. Aylor found that he could not perform many of his employment duties, such as using the leaf blower, operating the weed-eater, and mowing with a push mower. There was testimony from multiple sources that there was no maintenance work available within Aylor's restrictions. Aylor's employment with the school ended in September 2007. We agree with the Commission that Aylor is not entitled to section 11–9–505(a)₇ benefits in connection with his maintenance work for the District because the District did not have any maintenance work within Aylor's limitations.

But Aylor also drove a bus for the District and was able to perform his bus-driving duties upon his return to work after recovering from his injuries. Aylor testified that he was paid different rates for his maintenance work and for driving a bus. He also said that he thought that he was under separate contracts for the two jobs. Don McGohan, the District's Assistant Superintendent, sent Aylor a letter in October 2007, which stated "we are willing for you to return to work immediately since your doctor has issued this new medical opinion, including driving a bus." The letter instructed Aylor to contact Mr. Padgett, the maintenance supervisor, and Mr. Farmer, the bus supervisor, about returning to work as soon as possible.

In its opinion, however, the Commission gave short shrift to this facet of Aylor's employment with the District. It stated, "we note the claimant's testimony at hearing that he drove a bus for only one hour daily before his compensable injuries and performed maintenance work for the balance of his employment duties." The Commission concluded that Aylor was not entitled to section 11–9–505(a) benefits because he "did not prove suitable employment within [his] physical limitations was available with the employer." We reverse and remand for further findings on whether Aylor is entitled to section 11–9–505(a) benefits stemming from his work as a bus driver for the District. *Pharmerica,* 103 Ark.App. at 15, 285 S.W.3d at 704. Two primary questions need to be answered: (1) Was Aylor's work as a bus ₈driver separate from, or part and parcel of, his maintenance work; and (2) If Aylor's work as a bus driver should be considered separately, then is he entitled to section 11–9–505(a) benefits?

Affirmed in part; reversed and remanded in part.

GLOVER and HOOFMAN, JJ., agree.