
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-17-105

ARKANSAS DEPARTMENT OF
CORRECTION AND ARKANSAS
INSURANCE DEPARTMENT, PUBLIC
EMPLOYEE CLAIMS DIVISION
APPELLANTS

V.

CHRISTIE DAWN JENNINGS
APPELLEE

**Opinion Delivered** September 13, 2017

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. G504734]

AFFIRMED

## LARRY D. VAUGHT, Judge

Appellants, Arkansas Department of Correction (ADC) and the Public Employee Claims Division of the Arkansas Insurance Department (collectively referred to throughout as appellants), appeal the decision of the Arkansas Workers' Compensation Commission (the Commission) reversing the Administrative Law Judge's (ALJ) decision and awarding appellee, Christie Dawn Jennings, benefits under Arkansas Code Annotated section 11-9-505(a) (Repl. 2002). We affirm.

On April 20, 2015, Jennings began working as a correctional officer at the East Arkansas Regional Unit of the ADC (commonly known as the Brickeys Unit). On June 29, 2015, Jennings was serving food in the barracks when she slipped on the wet floor and twisted her right knee. She alerted a coworker to the injury, and her coworker contacted the lieutenant. The lieutenant and the sergeant came down to the barracks and instructed Jennings to fill out an injury report, which she did. They then sent her to see Dr. James Jacobs in Wynne, and she

SLIP OPINION

was seen by Dr. Jacobs that day. Dr. Jacobs diagnosed her with a "sprain of right knee" and wrote that she was "unable to work." The ADC paid temporary total-disability benefits beginning June 30, 2015. On July 1, 2015, an MRI on Jennings's knee revealed "edema surrounding the superficial MCL, suggesting a grade I sprain" and "[p]atellofemoral and medial femorotibial compartment chondromalacia" with "small knee joint effusion." At a follow-up appointment on July 6, Dr. Jacobs again found that Jennings could not work. On July 13, Dr. Jacobs recommended that Jennings "wear knee brace, return to work 7/14/15." It is undisputed that the ADC paid temporary total-disability benefits through July 13, 2015.

Jennings then returned to restricted work at the Brickeys Unit. She performed restricted duties for one month, working in the isolation area. She sat at a desk in a guard station and kept a log of who entered and exited the building. Although the general policy was to rotate employees to new work assignments every two weeks, Jennings worked the desk in isolation for a month while her knee continued to heal. On or about August 4, 2015, Jennings was rotated to a patrol position in the barracks. Jennings testified that the patrol job required a significant amount of walking and climbing stairs, which she had not done since her injury. She testified that when she woke up on the morning after her first day on patrol duty, her knee was severely swollen and she could not walk. She immediately called both her lieutenant and the ADC's designated contact person for workers'-compensation claims, Rudy Bischof (whom she could not reach). Jennings then went to see a doctor, who took her off work for a week due to the swelling in her knee. Bischof returned Jennings's phone call and instructed her to see Dr. Jacobs, which she did. Dr. Jacobs put Jennings on light duty from August 12 until she

could be seen by an orthopedic surgeon, Dr. Guinn, on August 26. It is undisputed that the ADC reinstated temporary total-disability benefits on August 6.

On August 26, Dr. Guinn performed an MRI, diagnosed Jennings with a "Grade I MCL," and prescribed physical therapy, a new knee brace, and "sitting duty" at work. Because the ADC had a policy of periodically rotating employees to different positions, it did not put her on a desk job such as the one she had just completed. Jennings was told that there were no light-duty positions available, and then on August 31, 2015, the ADC terminated Jennings's employment, stating that she was not a "qualified employee" under the Family Medical Leave Act (FMLA). Jennings's termination letter stated that once she had recovered and could perform all necessary job functions, she could reapply for her job and would be "considered for rehire." It is undisputed that the ADC continued to pay Jennings's temporary total-disability benefits until she reached maximum medical improvement and was released by Dr. Guinn to return to full duty.[1]

On November 12, Jennings's attorney corresponded with the ADC counsel and demanded that Jennings be reinstated to her previous position, with all benefits, rank, pay, seniority, etc., as it was before she was terminated. The ADC refused to reinstate Jennings.

Jennings filed a claim for additional compensation for a period beginning November 9, 2015, pursuant to Arkansas Code Annotated section 11-9-505 due to the ADC's refusal to return her to work. The ADC controverted the claim. After a hearing, the ALJ ruled in favor of the ADC, finding that Jennings had not proved that she was entitled to benefits. In an

---

[1]The ADC paid benefits until November 8, 2015. Jennings was released to return to work on November 9, 2015.

SLIP OPINION

opinion dated October 25, 2016, the Commission reversed the ALJ and awarded Jennings benefits under section 11-9-505. The Commission awarded Jennings her average weekly wages for a period beginning November 10, 2015, and not exceeding one year, benefits not to be subtracted.

In appeals from the Arkansas Workers' Compensation Commission, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we must affirm if those findings are supported by substantial evidence. *Mullin v. Duckwall Alco*, 2016 Ark. App. 122, 484 S.W.3d 283. The issue on appeal is not whether the appellate court would have reached a different result or whether the evidence could support a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm. *Id.*

Arkansas Code Annotated section 11-9-505(a)(1) states:

Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the Workers' Compensation Commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of the refusal, for a period not exceeding one (1) year.

Ark. Code Ann. § 11-9-505 (Repl. 2002).

On appeal, appellants argue that the Commission erred because (1) *Davis v. Dillmeier*, 330 Ark. 545, 956 S.W.2d 155 (1997), interpreted subsection 505(a) as not allowing for additional benefits when the claimant was no longer receiving workers'-compensation benefits; (2) Jennings had not proven her entitlement to 505(a) benefits; (3) the Commission awarded a full year of benefits to Jennings despite the fact that a full year had not yet elapsed

SLIP OPINION

at the time of the ruling; and (4) the Commission awarded her 505(a) benefits without subtracting any other benefits, when there was evidence that she received unemployment.

Appellants argue that *Davis* is controlling and prohibits an award of 505(a) benefits in this case. In *Davis*, the Arkansas Supreme Court held that a claimant who was no longer receiving workers'-compensation benefits for disability was not entitled to benefits under subsection 505(a) because the statute allows for 505(a) benefits "in addition to other benefits." Ark. Code Ann. § 11-9-505(a)(1). However, *Davis* has been narrowed and distinguished by subsequent cases, which noted that *Davis* was not a workers'-compensation case but was instead a civil rights case originating in circuit court. *See, e.g., Clayton Kidd Logging Co. v. McGee*, 77 Ark. App. 226, 230, 72 S.W.3d 557, 559 (2002). In fact, in *Davis*, the court specifically addressed whether the claims arose under subsection 505(a) and instead found that "this case presents an issue of employer discrimination, rather than a situation where the employer has refused to return the injured employee to work." *Davis v. Dillmeier Enters., Inc.*, 330 Ark. 545, 551, 956 S.W.2d 155, 158 (1997).

In *Clayton Kidd Logging*, we affirmed the Commission's award of 505(a) benefits, even though McGee was not receiving workers'-compensation disability benefits, saying conclusively that "*Davis* is not applicable to the case at hand," in part because *Davis* is legally distinguishable as a civil-rights case and in part because Cynthia Davis had returned to work while she was receiving medical treatment and was later terminated only after she had fully concluded her workers' compensation claim, making the case factually distinguishable. *Clayton Kidd Logging Co.*, 77 Ark. App. at 230, 72 S.W.3d at 560. Finally, in *Clayton Kidd Logging* we relied on *Torrey v. City of Fort Smith*, 55 Ark. App. 226, 934 S.W.2d 237 (1996), a workers'-

5

compensation case in which we held that, before section 11-9-505(a) benefits may be awarded, several requirements must be met: the employee must prove by a preponderance of the evidence (1) that he has sustained a compensable injury, (2) that suitable employment that is within his physical and mental limitations is available with the employer, (3) that the employer refused to return him to work, and (4) that the employer's refusal to return him to work is without reasonable cause. Notably, the *Torrey* factors do not include any inquiry into whether the claimant is also receiving disability benefits. In *Torrey*, and again in *Clayton Kidd Logging*, we explained that "the legislative intent that the injured worker be allowed to reenter the work force permeates the language of sections of the Act." *Torrey,* 55 Ark. App. at 230, 934 S.W.2d 237, 239 (1996).

In the present case, appellants are attempting to resurrect an argument we have previously considered and rejected. We again hold that *Davis* is distinguishable from workers'-compensation cases such as *Torrey* and *Clayton Kidd Logging,* and it provides no basis for reversal in the present case. An award of workers'-compensation disability benefits is not a statutory prerequisite to an award of 505(a) benefits.

Appellants also argue that Jennings failed to prove that she was entitled to 505(a) benefits under the *Torrey* factors. As discussed above, *Torrey* established a four-prong test for awarding such benefits. Here, appellants do not challenge the first two factors, but they argue that the ADC did not refuse to return Jennings to work because it told her she could reapply for a position when she recovered and that its decision was not without reasonable cause.

First, we note that, even while recovering from her injury, Jennings could have, and tried to, return to work. Despite the ADC's contention that Jennings was "off work with no

return date," Jennings had not been completely taken off work by her physician, she was simply given a work restriction of light or "sitting" duty. While the ADC told her that no light-duty positions were available, the evidence reveals that she had previously been given such a position, working at a desk in the isolation area for approximately a month. While the ADC has an internal policy of rotating workers to new assignments every two weeks, it is disingenuous for ADC to argue that light-duty work was not available to Jennings. Such work clearly existed within the scope of Jennings's employment.

However, Jennings only sought and was awarded 505(a) benefits for ADC's refusal to put her back to work when she fully recovered from her injury and could work without medical restriction. ADC contends that it did not refuse to return Jennings to work because it told her that she could reapply for an ADC job once she recovered. Jennings's counsel demanded reinstatement to her previous position, which the ADC refused. We agree with the Commission's findings that allowing an injured employee to "reapply" and "be considered" for employment is not sufficient to meet the statutory requirement that the employer return the employee to work. That is because the option to "reapply" and "be considered" for employment necessarily involves an element of uncertainty as to the outcome of the application process. Moreover, even if Jennings were rehired, she would have lost credit for the time she had successfully worked during her probationary period, requiring her to start anew. Both the plain language of the statute and its recognized purpose focus on returning an

injured employee to work, and we agree with Jennings that reinstatement, rather than reapplication, was required.[2]

Similarly, we reject the ADC's argument that Jennings failed to prove the fourth *Torrey* prong because her failure to reapply for ADC employment gave the ADC "reasonable cause" not to return her to work. As discussed above, reapplication is not the equivalent of reinstatement, and the record clearly shows that Jennings's attorney made a formal demand for reinstatement, which the ADC refused.

The ADC also argues that Jennings is not entitled to benefits under subsection 505(a) because, as a probationary employee, she was not protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* The ADC claims that it cannot be held liable for abiding by the federal policy codified in the FMLA. This argument is unpersuasive. While it is true that Jennings was not covered under the FMLA's job-protection provisions, she is not seeking a remedy under the FMLA. Instead, Jennings properly claimed that she was entitled to benefits under Arkansas workers'-compensation law. For Arkansas workers who are injured on the job, subsection 505(a) provides job protections apart from, and in addition to, what the federal government provides pursuant to the FMLA. Simply put, the FMLA is irrelevant to the case at bar. While the ADC was not required to hold Jennings's job and reinstate her under the

---

[2]The cases on which appellants rely are distinguishable: they deal with the reasonableness (fourth *Torrey* prong) of the employer's refusal to hire the claimant for a different position when the claimant could no longer perform his or her previous work, *see Miner v. Yellow Transp., Inc.*, 2009 Ark. App. 197, 301 S.W.3d 12; *Lepel v. St. Vincent Health Servs.*, 96 Ark. App. 330, 333, 241 S.W.3d 784, 787 (2006), or where the employer provided a work accommodation and the claimant was terminated for other reasons, *see Robertson v. Pork Group, Inc.*, 2011 Ark. App. 448, 383 S.W.3d 639. Appellants have neither cited, nor have we found, any case holding that designating an employee as "eligible to reapply" for her previous position generally satisfies subsection 505(a)'s reinstatement requirement.

FMLA, it is required to do so under subsection 505(a) of the Arkansas Code. Our state legislature has deemed it appropriate to grant enhanced job protections for those who are injured on the job, beyond what the FMLA generally provides for all covered employees.

Additionally, the ADC's argument that interpreting subsection 505(a) in this way violates our state's employment-at-will doctrine is misguided. While it is true that Arkansas is, by common law, an employment-at-will state, a common-law doctrine cannot override the clear and specific enactments of the Arkansas General Assembly in passing Arkansas Code Annotated section 11-9-505(a). It is a basic rule of statutory construction that we are to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Ark. Soil & Water Conservation Comm'n v. City of Bentonville*, 351 Ark. 289, 92 S.W.3d 47 (2002). As former Chief Justice Howard Brill notes in *Arkansas Law of Damages*, "[t]he public policy exception to the at-will doctrine prevents employees from being discharged in violation of a well-established and substantial public policy of the state. Public policy is established by the Constitution and statutes." Howard W. Brill & Christian H. Brill, *Arkansas Law of Damages*, § 19:2 (6th Ed. 2014).

The ADC next argues that it was error for the Commission to award benefits for a full year, when a full year had not yet elapsed since the date Jennings demanded and was denied reinstatement. However, the Commission's order specifically states that "In accordance with the Court's holding in *Torrey*, the claimant is entitled to continuing additional benefits beginning November 10, 2015 for a period not exceeding one year." Just as the Commission did not, in its written opinion, actually calculate her average weekly wage, it did not specify that she should be paid that wage for a full year, but instead simply cited to *Torrey* and the

statute for the principle that the benefits cover the period in which the employer refuses to reinstate the claimant *up to a year*.

The ADC's last argument is that the award of 505(a) benefits should have been reduced to reflect evidence that Jennings received unemployment benefits during the period covered by the award. This issue was not presented to the Commission as a question to be litigated in this case, and the Commission made no specific findings on this topic. Moreover, the argument is undeveloped on appeal; the ADC has provided no legal citations on which we could base a reversal. To the extent that the ADC appears to rely on a separate workers'-compensation statute, Arkansas Code Annotated section 11-9-506(a), which prohibits the award of disability benefits for any week that an injured employee receives unemployment benefits, that statute is not applicable here because 505(a) benefits are not disability benefits. Alternatively, to the extent that the ADC is arguing that unemployment benefits are contemplated under subsection 505(a)'s language allowing a claimant to recover "the difference between benefits received and the average weekly wages lost during the period of the refusal," the Commission did not make any finding that Jennings was receiving benefits of any kind, and the ADC argued below and on appeal that she was not.[3]

Affirmed.

KLAPPENBACH and MURPHY, JJ., agree.

*Charles H. McLemore Jr.*, Public Employee Claims Division, for appellant.

*Matthew, Sanders & Sayes, P.A.*, by: *William Ray Sanders*, for appellee.

---

[3]Specifically, appellants argued that Jennings was not entitled to 505(a) benefits under *Davis* because she was not receiving workers'-compensation benefits. It did not address how or if unemployment benefits would have factored into that analysis.