620 S.E.2d 144

**Theresa D. MESSER, Appellant,**

v.

**HUNTINGTON ANESTHESIA GROUP, INC., Dr. Farouk Abadir, Dr. Hosney S. Gabriel, Dr. Mark Newfeld, Dr. Ricardo Ramos, Dr. Alfredo Rivas, Dr. D. Grant Shy, Dr. Stanislav Striz and Dr. Michael Vega, Appellees.**

No. 31739.

Supreme Court of Appeals of West Virginia.

Submitted: March 22, 2005.

Filed: July 7, 2005.

Walt Auvil, The Employment Law Center, PLLC, Parkersburg, for Appellant.

Elizabeth D. Harter, Mark H. Dellinger, Bowles, Rice McDavid Graff & Love, LLP, Charleston, for Appellees.

Darrel V. McGraw, Jr., Attorney General, Jamie S. Alley, Assistant Attorney General, Paul R. Sheridan, Assistant Attorney General, West Virginia Attorney General's office, Charleston, for Amicus Curiae The West Virginia Human Rights Commission.

Justice BENJAMIN delivered the opinion of the Court.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

BENJAMIN, Justice.

This case is before the Court upon the appeal of the Appellant, Theresa D. Messer ("Messer"), from the August 18, 2003, order of the Circuit Court of Cabell County, West Virginia, in Civil Action No. 02–C–0635, wherein the court granted the motion of the defendants, Huntington Anesthesia Group, Inc., Dr. Farouk Abadir, Dr. Hosny S. Gabriel, Dr. Mark Newfeld, Dr. Ricardo Ramos, Dr. Alfredo Rivas, Dr. D. Grant Shy, Dr.

Stanislav Striz, Dr. Michael Vega, and David Easter (hereinafter collectively referred to as "Appellees"), to dismiss. Appellant's complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure for failure to state a claim upon which relief could be granted. In her complaint, Messer sought recovery under The West Virginia Human Rights Act ("the WVHRA") for both an aggravated or worsened physical injury and non-physical injuries stemming from the alleged refusal of Appellee Huntington Anesthesia Group, Inc., her employer, to accommodate her disability, a herniated disc at L4–L5. The circuit court made two findings in its August 18, 2003, order:

1. The West Virginia Human Right Act does not create a cause of action for workplace injuries;

2. Any injuries as alleged and sustained are the exclusive jurisdiction of the Workers' Compensation Act.

Appellant, Messer, asks this Court to reverse the circuit court's August 18, 2003, order because its findings are contrary to West Virginia law, to the holdings of the overwhelming majority of state courts which have considered the issue, and to formal guidance from the U.S. Equal Employment Opportunity Commission ("EEOC") on analogous federal civil rights protections. Messer's position is supported by the West Virginia Human Rights Commission ("HRC") in a brief as *amicus curiae*. Appellees, on the other hand, contend that Messer improperly seeks to expand the scope of the WVHRA, W. Va.Code § 5–11–1 *et seq.*, to create a cause of action for workplace injuries in contravention of the exclusivity provisions of the West Virginia Workers' Compensation Act ("Workers' Compensation Act"), W. Va.Code §§ 23–2–6 (2003) and 6a (1949).

This Court has before it Appellant's petition for appeal, all matters of record, the briefs of the parties, the brief of the HRC as *amicus curiae*, and has heard oral argument of counsel. For the reasons stated below, the circuit court's order of August 18, 2003, is reversed, and this case is remanded to the circuit court to allow it to proceed, consistent with this opinion, without being barred by

the exclusivity provisions of the West Virginia Workers' Compensation Act.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Since Appellant's complaint was dismissed at the pleading stage, the facts are largely as alleged therein, which, for purposes of a Rule 12(b)(6) motion, are to be taken as true. *Sticklen v. Kittle*, 168 W.Va. 147, 163, 287 S.E.2d 148, 157 (1981)(citing *John W. Lodge Distributing Co. v. Texaco*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978)). Messer's complaint was filed on August 1, 2002. According to Appellees' brief, David Easter, the last named defendant, is deceased, and on January 28, 2003, the circuit court entered an order dismissing him from the action with prejudice and amending the case style accordingly.

The complaint alleges that Messer was employed as a Certified Registered Nurse Anesthetist by Appellees from September 13, 1988, until an unspecified date in September, 2000; and that at all relevant times, she suffered from a herniated disc at L4–L5, which limited her ability to lift, stand, and work. After January, 1998, Messer alleges that her primary treating physician informed Appellees on multiple occasions that Messer was limited to eight-hour work days, lifting restrictions, and that she should refrain from overtime "due to her injury." Messer asserts that Appellees ignored these restrictions and that Appellees failed to accommodate her physical handicap. As a result, Messer claims that her physical condition progressed and worsened to the point in September, 2000, that she was no longer able to perform her duties as a Certified Registered Nurse Anesthetist for Appellees.

The record is not fully developed as to the underlying injury which caused Messer's back problems or Messer's later aggravations. It is apparent to the Court from the thrust of Messer's arguments that her physical claims herein were largely, if not entirely, within the scope of coverage of the Workers' Compensation Act. Appellees claim that Messer sustained a compensable work-related back injury on August 8, 1997. A few years later, Appellees assert that Messer experienced an exacerbation of her compensable injury which required reopening of her workers' compensation claim in October of 2000. Appellees argue that Messer "... has received workers' compensation benefits for the injuries she alleges in the instant action." Messer's pleadings are silent as to the nature of her back injury or whether she, in fact, received workers' compensation benefits in whole or in part for the physical injuries alleged herein. Messer merely alleges that she "has at all times relevant hereto suffered from a herniated disc at L4–L5." [1] In reply to Appellees' factual statements, Messer does not expressly deny such representations with respect to Messer filing a workers' compensation claim, reopening the claim, or receiving workers' compensation benefits for the injuries she alleges in the instant action. Although she states that "[t]here is no support in the record for several assertions made in the introduction to Appellees' brief because there has been no factual development in this matter," she does not identify

1. Appellees' statements are apparently based upon Exhibit 1 to Messer's Petition for Appeal. It is a copy of an EEOC "Determination" letter, dated September 12, 2002, addressed to Messer and Appellees from Eugene V. Nelson, Area Director, EEOC, Pittsburgh Area Office, in regard to Charge Number: 172–A–11170. The "Determination" letter contains the following information about Messer's physical condition: "Charging Party, a Nurse Anesthetist, alleged that the Respondent [Appellees] discriminated against her because of her disability by failing to engage in the interactive process for a reasonable accommodation since August 8, 1997, and as a result, it became medically necessary for her to return to Worker's Compensation in October, 2000." Appellees' statement that "[i]n October of 2000, Appellant re-opened her previous worker's compensation claim" therefore finds some support in the statement in the "Determination" letter. The "Determination" letter makes one finding and two determinations, namely: that "Respondent failed to adhere to the medical restrictions requested for Charging Party"; that "the evidence obtained during the investigation does establish a violation of the Americans with Disabilities Act (ADA) with respect to the reasonable accommodation matter;" and that "the evidence obtained during the investigation does not establish a violation of the American with Disabilities Act (ADA) with respect to the benefits and compensation matter."

what those assertions are. Nor does she deny the representations which Appellees made in their Statement of Facts and Argument.

As noted above, the circuit court in an order issued on August 18, 2003, granted Appellees' motion pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure to dismiss Messer's complaint for failing to state a claim upon which relief could be granted. In so ordering, the court made two findings, namely, that the WVHRA does not create a cause of action for workplace injuries, and that such injuries are the exclusive jurisdiction of the Workers' Compensation Act.

## II.

## STANDARDS OF REVIEW

■ "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition." Syllabus point 1, *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996).

## III.

## DISCUSSION

### A.

### The Issue on Appeal and the Nature of Appellant's Claims

This appeal presents the issue of whether the exclusivity provisions of the West Virginia Workers' Compensation Act shield an employer from the injuries directly caused by its unlawful discriminatory conduct against an employee in the workplace. Stated differently, we consider on this appeal whether an employee may seek to recover under the WVHRA for actual injuries caused not by an injury received in the course of and arising out of his or her employment for which workers' compensation benefits would ordinarily be payable, but rather for actual injuries of a kind for which workers' compensation benefits are not ordinarily payable, which flow directly and uniquely from the employer's unlawful discrimination against the employee. Key to our consideration of the issues presented are the important policies codified within the Workers' Compensation Act and the WVHRA, both systems of legislative creation. This consideration leads us necessarily to distinguish not only the nature of the acts alleged to have caused the claimed injuries, but also the type of injuries for which recovery is claimed and whether or not such injuries depend for their viability upon an injury which was compensable under the Workers' Compensation Act.

The essence of Messer's claims is that she sustained an aggravation or worsening of an underlying physical injury because of Appellees' refusal to abide by her work restrictions and that Appellees violated their obligation of accommodation and interaction under the WVHRA. In addition, she seeks recovery for non-physical injuries, which she describes as "emotional distress, mental distress and anguish," stemming from the same refusal and violation, and for the nonphysical injuries she is seeking, according to her complaint, "damages for mental and emotional distress, lost wages, value of lost benefits, cost and attorney fees, reinstatement, injunctive relief against future violations of the law, and such other and further relief as may upon the premises be appropriate." Messer contends some claimed injuries are not recoverable in a workers' compensation claim, but admits that others are. In its brief as *amicus curiae*, the HRC focuses its attention on Appellees' failure to accommodate, arguing "[a]n action alleging breach of the duty to reasonably accommodate is not an action for workplace injury compensation."

### B.

### The Workers' Compensation Act

### (Its Exclusivity)

The essence of the exclusivity of the Workers' Compensation Act for work-related inju-

ries is found at W. Va.Code § 23–2–6 (2003), which provides that an employer "is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring."[2] In *State ex rel. Abraham Linc Corporation v. Bedell,* 216 W.Va. 99, 602 S.E.2d 542, 546–547 (2004) (per curiam), we had an opportunity to comment on the important principles underlying the Workers' Compensation system and the scope of this exclusivity provision of W. Va. Code § 23–2–6 (1991):

> "The Workmen's Compensation Act was designed to remove negligently caused industrial accidents from the common law tort system." *Mandolidis v. Elkins Indus., Inc.,* 161 W.Va. 695, 700, 246 S.E.2d 907, 911(1978), *superseded by statute as stated in Handley v. Union Carbide Corp.,* 804 F.2d 265, 269 (4th Cir.1986). "The benefits of this system accrue both to the employer, who is relieved from common-law tort liability for negligently inflicted injuries, and to the employee, who is assured prompt payment of benefits." *Meadows v. Lewis,* 172 W.Va. 457, 469, 307 S.E.2d 625, 638 (1983); *see also Persinger v. Peabody Coal Co.,* 196 W.Va. 707, 713, 474 S.E.2d 887, 893 (1996). *State ex rel. Abraham Linc Corp.,* 216 W.Va. 99, 602 S.E.2d at 546. [In footnote seven, the Court stated: "That philosophy has commonly been described as a *quid pro quo* on both sides: in return for the purchase of insurance against job-related injuries, the employer receives tort immunity; in return for giving up the right to sue the employer, the employee receives swift and sure benefits." *Dominion Caisson Corp. v. Clark,* 614 A.2d 529, 532–33 (D.C.1992) quoting *Meiggs v. Associated Builders, Inc.* 545 A.2d 631, 634 (D.C.1988), *cert.*

*denied,* 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989).]

\*　　\*　　\*　　\*　　\*　　\*

As this Court succinctly stated in *State ex rel. Frazier v. Hrko,* 203 W.Va. 652, 510 S.E.2d 486 (1998), " '[w]hen an employer subscribes to and pays premiums into the Fund, and complies with all other requirement of the Act, the employer is entitled to immunity for any injury occurring to an employee and shall not be liable to respond in damages at common law or by statute.' W. Va.Code, 23 –2–6 [1991]." 203 W.Va. at 659, 510 S.E.2d at 493. Footnote eleven of *Frazier* explained: "This statute is also known as the 'exclusivity' provision, as it makes workers' compensation benefits the exclusive remedy for personal injuries sustained by an employee injured in the course of an resulting from his or her covered employment." Id. at 659 n. 11, 510 S.E.2d at 493 n. 11. *State ex rel. Abraham Linc Corp.,* 216 W.Va. 99, 602 S.E.2d at 547.

The immunity provided by § 23–2–6 is not easily forfeited. As the District Court for the Southern District of West Virginia explained in *Smith v. Monsanto Co.,* 822 F.Supp. 327 (S.D.W.Va.1992), "[u]nder the Act, an employer who is otherwise entitled to immunity under § 23–2–6 may lose immunity in only one of two ways: (1) by defaulting in payments required by the Act or otherwise failing to comply with the provisions of the Act, or (2) by deliberately intending to produce injury or death to the employee." 822 F.Supp. at 330 (citation omitted).

*State ex rel. Abraham Linc Corp.,* 216 W.Va. 99, 602 S.E.2d at 547. The effect of this exclusivity is, by statute, far-reaching. In W.

---

2. W. Va.Code § 23–2–6 (2003), in relevant part, provides:

> *Any employer* subject to this chapter who subscribes and pays into the workers' compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided in this section *is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring,* after so subscribing or electing, and during any period in which the employer is not in default in the payment of

premiums or direct payments and has complied fully with all other provisions of this chapter.

(Emphasis added). W. Va.Code § 23–2–6a (1949), in relevant part, provides:

> The immunity from liability set out in the preceding section shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.

Va.Code § 23–4–2(d)(1) and (2) (2003), the Legislature declared:

> ... that enactment of this chapter and the establishment of the workers' compensation system in this chapter was and is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as expressly provided in this chapter ...; that the immunity established in sections six [§ 23–2–6] and six-a [§ 23–2–6a], article two of this chapter is [deemed] an essential aspect of this workers' compensation system; *that the intent of the Legislature in providing immunity from common lawsuit was and is to protect those immunized from litigation outside the workers' compensation system except as expressly provided in this chapter;* that, in enacting the immunity provisions of this chapter, the Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct; and that it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

> (2) The immunity from suit provided under this section and under section six-a, article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". [sic]

*Id.* (Emphasis added).

When considered together, the words "injury" and "however occurring," in W. Va. Code § 23–2–6 (2003) and the expression of legislative intent in W. Va.Code § 23–4–2(d)(1) (2003) provide employers with an expansive immunity from liability outside the workers' compensation system for workplace injuries of employees.[3] This immunity, however, is not absolute. Exceptions to this immunity are set forth specifically and implicitly in the Workers' Compensation Act.

While exceptions to the exclusivity provision of W. Va.Code § 23–2–6 (2003) exist, the Legislature has been extremely restrictive in creating such exceptions. For example, an employer is not immune from lawsuit for workplace injuries if the employer "acted with deliberate intention." W. Va.Code § 23–4–2(d)(2) (2003).[4] Messer does not claim that she comes within this exception.

The Legislature has also specifically set forth private civil remedies outside of the exclusivity provision for certain discriminatory practices by an employer related to employees who have compensable injuries. W.

**3.** Deborah A. Ballam, *The Workers' Compensation Exclusivity Doctrine: A Threat to Workers' Rights Under State Employment Discrimination Statutes,* American Business Law Journal, 95, 102–106, (Spring, 1989), describes the exclusivity doctrine as being the "Sacred Cow of Workers' Compensation" stating that "most courts and state legislatures have vigorously protected the concept of employer immunity by aggressively promoting the exclusivity doctrine, even in cases where the injury did not arise from normal incidents of the employment. Courts have protected the doctrine by refusing, for the most part, to allow judicially created exceptions, while the legislatures have protected the doctrine by reacting with legislation repealing the few efforts the courts have made to reduce its scope."

**4.** Messer contends in her reply brief that "West Virginia Code §§ 23–4–2 ('Deliberate Intention') has no application to a WVHRA Claim" citing *Miller v. City Hospital Inc.,* 197 W.Va. 403, 475 S.E.2d 495 (1996). The *Miller* case, however,

did not involve a claim under the WVHRA. It was a "deliberate intention" case wherein Miller alleged that her employer had engaged in outrageous conduct that intentionally inflicted emotional distress on her. The Court affirmed the circuit court's summary judgment in favor of the hospital because Miller had failed to offer concrete evidence that the hospital's acts violated a specific safety statute or standard as required by W. Va.Code § 23–4–2(c)(2)(ii)(C) (1994). In footnote 5 immediately following the Court's affirmation of the circuit court's summary judgment, the Court stated: "Although Ms. Miller's claim does not fall within the 'deliberate intention' exception, because her claim is work-related, any remedy she may have is set forth in the Workers' Compensation Act, W. Va.Code § 23–1–1 (1995) et seq. This opinion addresses neither the merits of her claim, nor its compensability under the Workers Compensation Act." *Miller,* 197 W.Va. at 410, 475 S.E.2d at 502.

Va.Code § 23–5A–1, *et seq.*[5] Though Messer apparently does not invoke these anti-discrimination provisions of the Workers' Compensation Act, we do find such provisions revealing with respect to the types of acts and resulting injuries which the Legislature has envisioned to fall within and without of the exclusivity provision of W. Va.Code § 23–2–6 (2003).

These exceptions reveal that the most significant word in the exclusivity provision of W. Va.Code § 23–2–6 (2003) for purposes of the issues before us in the instant matter is the term "injury". In considering any potential exception to the exclusivity provision, *i.e.*, that an employer "is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring," we must look to the other provisions of the Workers' Compensation Act to determine the Legislature's intent in defining what is and what is not a compensable "injury" for purposes of the exclusivity provision. *Id.* W. Va.Code § 23–4–1, *et seq.*, establishes that injuries and defined occupational diseases incurred "in the course of and resulting from [an employee's] covered employment" are compensable injuries. W. Va.Code, § 23–4–1, *et seq.* Implicit in this statutory definition of "injury" is the limitation that

only occupational diseases "as hereinafter defined" are compensable. W. Va.Code § 23–4–1(b) (2003). We must draw from this express limitation that the Legislature intended certain work-related events, here, occupational diseases not "hereinafter defined" to not come within the meaning of "injury" for purposes of the Workers' Compensation Act generally and the exclusivity provision specifically.

The Legislature also expressly exempted other work-related injuries from the definition of what may be a compensable injury for purposes of the Workers' Compensation Act. For instance, W. Va.Code § 23–4–1f (1993) states that "[f]or the purposes of this chapter, no alleged injury or disease shall be recognized as a compensable injury or disease which was solely caused by nonphysical means and which did not result in any physical injury or disease to the person claiming benefits. It is the purpose of this section to clarify that so-called mental-mental claims are not compensable under this chapter."[6]

To this list of work-related injuries exempted from the provisions of the Workers' Compensation Act (and, consequently, from the exclusivity provision of W. Va.Code § 23–2–6 (2003)), are the other express statutory exceptions within the Workers' Compensa-

---

**5.** W. Va.Code § 23–5A–1 (1978), in relevant part, provides:

> No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter.

W. Va.Code § 23–5A–2 (1982), in relevant part, provides:

> Any employer who has provided any type of medical insurance for an employee or his dependents by paying premiums, in whole or in part, on an individual or group policy shall not cancel ... or cause coverage provided to be decreased during the entire period for which that employee ... is claiming or is receiving benefits under this chapter for a temporary disability. ... *This section provides a private remedy for the employee* ....

(Emphasis added.) W. Va.Code § 23–5A–3 (1990), in relevant part, provides:

> It shall be a discriminatory practice within the meaning of section one [§ 23–5A–1] of this article to terminate an injured employee while the injured employee is off work due to a compensable injury ... unless the injured employee has committed a separate dischargeable

> offense.... It shall be a discriminatory practice ... for an employer to fail to reinstate an employee who has sustained a compensable injury .... Any *civil action brought under this section* shall be subject to [collective bargaining agreements and related exceptions].

(Emphasis added.)

**6.** This section of the Code was enacted in 1993 to overturn *Breeden v. Workmen's Compensation Comm'r*, 168 W.Va. 573, 285 S.E.2d 398 (1981), wherein the Court created a workers' compensation compensable injury called a "mental-mental" claim. In that case, an employee filed a workers' compensation claim for a mental disability which she suffered after being subjected to harassment from her immediate supervisor. The Court held that "an employee who sustains mental or emotional injury which occurs as a result of continuous and intentional harassment and humiliation from her supervisor extending over a period of time has suffered a personal injury as required by [the workers' compensation statute]." See Robin Jean Davis and Louis J. Palmer, Jr., *Workers' Compensation Litigation in West Virginia: Assessing the Impact of the Rule of Liberality and the Need for Fiscal Reform*, 107 W. Va. L.Rev. 43, 79–80 (Fall 2004).

tion Act discussed above; namely, injuries caused by an employer's "deliberate intention," as defined by W. Va.Code § 23–4–2 (2003), and injuries caused by certain discriminatory actions by an employer, as set forth in W. Va.Code § 23–5A–1, *et seq.* We find these latter two exceptions especially noteworthy for purposes of the matter before us since, in both instances, the Legislature has focused on the acts which underlie the resulting work-related injury as being determinative of whether the exclusivity provision is applicable.

## C.

### The West Virginia Human Rights Act

The purpose of the WVHRA[7] is, among other things, to assure equal employment opportunities to individuals with certain disabilities by making certain discriminatory practices unlawful. W. Va.Code § 5–11–9 (1998).[8] "The term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of … disability …." W. Va. Code § 5–11–3(h) (1998). Disability means a

mental or physical impairment which substantially limits one or more of a person's major life activities. W. Va.Code § 5–11–3(m) (1998).[9]

Effective May 19, 1994, the HRC adopted legislative "Rules Regarding Discrimination Against Individuals With Disabilities," which appear in W. Va.C.S.R. § 77–1–1 *et seq.* W. Va.C.S.R. § 77–1–4.5 obligates an employer to "make reasonable accommodation to the known physical or mental impairments of qualified individuals with disabilities where necessary to enable a qualified individual with a disability to perform the essential functions of the job."

In *Skaggs v. Elk Run Coal Company, Inc.,* 198 W.Va. 51, 64, 479 S.E.2d 561, 574 (1996), this Court acknowledged that although the WVHRA does not have an explicit provision obligating employers to provide reasonable accommodation for disabled individuals, "the West Virginia [HRC] and this Court have inferred that our [HRA] imposes this duty of reasonable accommodation." In support of this observation, the *Skaggs* Court referenced 77 W. Va.C.S.R. 1, § 4.4 (1994) and *Morris Mem. Convalescent Nursing Home,*

---

7. In Syllabus points 1 and 2 to *Price v. Boone County Ambulance Authority,* 175 W.Va. 676, 337 S.E.2d 913 (1985), this Court interpreted W. Va.Code § 5–11–13 (1985) and declared (1) that "[a] plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act," and (2) "[t]he remedies available in circuit court for violation of W. Va.Code § 5–11–9 are those set out in W. Va.Code § 5–11–13(c)." W. Va.Code 5–11–13(c) provides:

> In any action filed under this section, if the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay or any other legal or equitable relief as the court deems appropriate. In actions brought under this section, the court in its discretion may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant.

8. W. Va.Code § 5–11–9 (1998) provides:

> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational

qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

> (1) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled: [there follows a proviso which is not relevant to the issues on appeal].

9. W. Va.Code § 5–11–3(m) (1998), provides:

> The term "disability" means: (1) A mental or physical impairment which substantially limits one or more of such person's major life activities. The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working; (2) A record of such impairment; or (3) Being regarded as having such an impairment. For the purposes of this article, this term [disability] does not include persons whose current use of or addiction to alcohol or drugs prevents such persons from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.

*Inc. v. W. Va. Human Rights Comm'n.,* 189 W.Va. 314, 431 S.E.2d 353 (1993), and *Coffman v. W. Va. Bd. of Regents,* 182 W.Va. 73, 386 S.E.2d 1 (1988).

This Court's decision in *Coffman* is remarkable in three respects: It was this Court's first disability discrimination case under the WVHRA, it was later overruled, and it foreshadowed the issue on appeal in this case. Coffman, while employed as a Custodian I at the West Virginia University Hospital, injured her back in emptying garbage cans. She missed a month's work because of her injuries during which time she received temporary total disability benefits from workers' compensation. Upon returning to her position as Custodian I, her back continued to be painful and an orthopedist who examined her recommended that Coffman no longer work in either the housekeeping or dietary departments and that she not be placed in a position that required prolonged sitting. Some two months later, her employment was terminated by her employer. She thereupon filed a complaint in the Circuit Court of Monongalia County charging that she had been wrongfully discharged because of her disability. A jury returned a verdict in her favor in the amount of $55,600. The Board of Regents appealed and this Court reversed the judgment of the circuit court, set the verdict aside, and remanded the case with instructions to enter judgment in favor of the employer. The basis of this Court's decision was that

> "reasonable accommodation" requires only that an employer make reasonable modifications or adjustments designed as attempts to enable a handicapped employer to remain in the position for which he was hired. Where a handicapped employee can no longer perform the essential functions of that position, reasonable accommodation does not require the employer to reassign him to another position in order to provide him with work which he can perform.

*Id.* at 78, 386 S.E.2d at 6.

*Skaggs* overruled *Coffman* and in doing so stated that "*Coffman* was flat out wrong, both on its facts and in its dicta ruling out transfers as a reasonable accommodation."

198 W.Va. at 69, 479 S.E.2d at 579. However, *Coffman* is of interest to our consideration of the issues in the present matter. In its footnote 16, the *Coffman* Court stated:

> No party has challenged the fact and we, therefore, acknowledge that Coffman was handicapped by West Virginia law. We, however, note that she became handicapped as a result of an injury sustained on the job during the course of her employment. In this regard, we are concerned as to why Coffman did not pursue a claim for workers' compensation benefits beyond the 30-day period of temporary total disability. The appellants do not raise the issue of workers' compensation and we, therefore, do not address it. We note that the intent of the legislature inherent in the enacting of the handicapped provisions of the West Virginia Human Rights Act was to assure equal opportunities for the handicapped in housing and employment. W. Va.Code § 5–11–2. *Thus, we cannot conclude that the legislature intended the handicapped provisions of the West Virginia Human Rights Act as an alternative source of compensation for injuries sustained on the job.*

*Coffman,* 182 W.Va. at 79, 386 S.E.2d at 7. (Emphasis added.)

In a dissenting opinion to the *Coffman* decision, Justice Miller stated that he was "at a loss to understand footnote 16 of the majority's opinion [for][i]t seems to suggest that the legislature did not intend to accord handicapped workers any right if they were injured on the job." *Id.* at 85, 386 S.E.2d at 13. Justice Miller went on to observe "that workers' compensation benefits [both awards for temporary and permanent disability] relate to the employee's injuries and have nothing to do with his status under the handicap law. This latter provision is designed to prevent discrimination against a person who has a handicap." *Id.* at 85–86, 386 S.E.2d at 13–14. "Nor," he said, "is it possible to ascribe any legislative intent that employees handicapped as a result of occupational injuries were to be excluded from the coverage of the handicap discrimination law." *Id.* at 86, 386 S.E.2d at 14. Justice Miller concluded his dissent with these statements:

This type of issue has been raised in several cases, and the courts have had no difficulty in rejecting it on the basis that each statute is designed to accomplish distinctly different purposes. The Workers' Compensation Act affords compensation for a worker's injuries and permanent disabilities. The handicap provisions of the Human Rights Act enables him to continue in employment if his injuries do not prevent him from performing the essential functions of his job with the help of reasonable accommodation. E.g. *Boscaglia v. Michigan Bell Telephone Co.*, 420 Mich. 308, 362 N.W.2d 642 (1984); *Reese v. Sears, Roebuck & Co.*, 107 Wash.2d 563, 731 P.2d 497 (1987) (En Banc); cf. *Jones v. Los Angeles Community College Dist.*, 198 Cal. App.3d 794, 244 Cal.Rptr. 37 (1988).

*Id.* at 86, 386 S.E.2d at 14.

In the sixteen years since Justice Miller's dissent in *Coffman*, there have been a number of decisions in other jurisdictions where alleged employer disability discrimination against an employee has resulted from a workplace physical injury. In those decisions, the courts have had to reconcile the exclusivity provisions of their states' workers' compensation statutes and their human rights, civil rights and fair employment acts.

### D.

### Employment–Related Injuries: Workers' Compensation and Civil Rights Coverage

### Cases From Other Jurisdictions

A review of the status of law regarding the interaction of workers' compensation laws and civil rights laws from other jurisdictions in the United States provides a valuable insight into how other states have considered the issue before us herein. While each state necessarily has its own unique set of workers' compensation and civil rights laws, the underlying public policies for such laws have many similarities to our workers' compensation and civil rights laws. Though not precedential, a look to other states provides us some persuasive direction into our consideration of this appeal.

### 1. *Arkansas*

In *Davis v. Dillmeier Enterprises, Inc.*, 330 Ark. 545, 956 S.W.2d 155 (1997), Davis sustained bilateral carpal syndrome resulting from her employment for which she was compensated under Arkansas' workers' compensation laws. 956 S.W.2d at 156. She was assigned a rating of five percent permanent physical impairment in each upper extremity. Having obtained a release from further treatment, Davis reported to work and was immediately terminated from employment by her employer. She thereupon brought an action against her former employer for discrimination based upon a physical disability, in violation of the Arkansas Civil Rights Act for which she claimed damages in the form of lost wages, mental anguish, and loss of dignity. She also asked for punitive damages. The trial court dismissed the complaint "reasoning that it was the General Assembly's intent that the remedies provided under the Workers' Compensation Act were to be exclusive." *Id.* at 157.

Distinguishing the injury sustained by Davis by her termination from that caused by her compensable physical injury, the Supreme Court of Arkansas reversed the trial court's dismissal of Davis' complaint and remanded the case to allow Davis to proceed with her termination claim under the Arkansas Civil Rights Act. The Court reasoned as follows:

[T]here is no remedy under the Workers' Compensation Act for an employee who is terminated from his or her job on the basis of a disability. Thus, the exclusive-remedy provision of the Act does not preclude Appellant from bringing an action under the Arkansas Civil Rights Act based upon Appellee's alleged discrimination in terminating her on the bases of her permanent restrictions and impairments. In this respect, we agree with the reasoning espoused by the Washington Supreme Court [in *Reese v. Sears, Roebuck & Co.*, 107 Wash.2d 563, 731 P.2d 497 (Wash.1987), overruled on other grounds by *Phillips v. City of Seattle*, 111 Wash.2d 903, 766 P.2d 1099 (Wash.1989) ] that it matters not how the disability came about; rather, the focus should be upon the subsequent deliber-

ate action by the employer in terminating the employee based upon a disability. Additionally, we are persuaded that the rights and remedies provided by both Acts are considerably different and serve to fulfill different purposes. *Appellant has alleged two separate injuries-one being a work-related physical injury, for which she has received workers' compensation benefits, and one being a subsequent nonphysical injury arising from Appellee's action in terminating her based upon her physical disability. The first injury is exclusively cognizable under the Workers' Compensation Act, while the subsequent injury is of the type envisioned by the Arkansas Civil Rights Act of 1993.*

*Id.* at 160–61. (Emphasis added.)

### 2. *California*

In *City of Moorpark v. Superior Court of Ventura County,* 18 Cal.4th 1143, 77 Cal. Rptr.2d 445, 959 P.2d 752 (1998), plaintiff was an administrative secretary employed by the city who suffered a work-related knee injury. Her supervisor terminated her employment because her injury prevented her from performing essential job functions. Plaintiff filed a lawsuit against the city claiming discrimination based on a physical disability in violation of California's Fair Employment and Housing Act (FEHA). The city defended asserting that plaintiff's action was barred by the exclusivity provisions of the workers' compensation law. The trial court disagreed and the Supreme Court of California affirmed.

At issue in *Moorpark* was whether California Labor Code section 132a provided the exclusive remedy for discrimination based on a work-related disability, precluding FEHA or common law wrongful discharge claims. Section 132a prohibited employers from discriminating against employees "who are injured in the course and scope of their employment." *City of Moorpark,* 77 Cal. Rptr.2d 445, 959 P.2d at 756. The California court had earlier ruled that when an injury of the kind described in section 132a results in disability, that section prohibits discrimination based on the disability. *Judson Steel Corp. v. Workers' Comp. Appeals Bd.,* 22 Cal.3d 658, 150 Cal.Rptr. 250, 586 P.2d 564 (1978). In addition, the FEHA prohibited various types of employment discrimination, including discrimination based on a disability.

The *Moorpark* court found that the existence of a workers' compensation remedy does not, by itself, establish the exclusivity of that remedy, and emphasized that section 132a does not contain an exclusive remedy clause. *Id.* at 1154, 77 Cal.Rptr.2d 445, 959 P.2d 752. The court also determined that the general exclusivity provisions of the state's workers' compensation code, sections 3600, subdivision (a) and 3602, subdivision (a) did not establish that section 132a is an exclusive remedy for work-related injury discrimination. The court reasoned that "the plain language of the exclusive remedy provisions contained in subdivisions (a) of sections 3600 and 3602 apparently limits those provisions to division 4 remedies. Remedies that the Legislature placed in other divisions of the Labor Code are simply not subject to the workers' compensation exclusive remedy provisions." *Id.* at 759. Section 132a was contained in division 1 of the Labor Code.

*Moorpark* also found that terminations in violation of section 132a fall outside of the compensation bargain because such conduct is " 'obnoxious to the interests of the state and contrary to public policy and sound morality.' " *Id.,* quoting, *Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680, 692 (1992) Lastly, the court emphasized the broad scope of the FHA and concluded that it would be inconsistent with the purposes of that legislation to limit its applicability to disabilities unrelated to work. See also the following decisions of California courts which discuss *Moorpark: Amalgamated Transit Union, Local 1277 v. Los Angeles County Metropolitan Transportation Authority,* 107 Cal.App.4th 673, 132 Cal.Rptr.2d 207 (2003); *Burton v. Ralphs Grocery Company,* 2002 WL 31031038 (Cal.Ct.App.2002) (Not Officially Published); *Ruiz v. Cabrera,* 98 Cal.App.4th 1198, 120 Cal.Rptr.2d 320 (2002); *Bagatti v. Department of Rehabilitation,* 97 Cal.App.4th 344, 118 Cal.Rptr.2d 443 (2002); and *Fretland v. County of Humboldt,* 69 Cal.App.4th 1478, 82 Cal.Rptr.2d 359 (1999).

■ We agree with the reasoning of the California court that it would be inconsistent with the purposes of the WVHRA to limit its applicability to physical-injury disabilities unrelated to work. Workers who are discriminated against because of a work-related injury should not be entitled to less protection under the law than workers disabled by non-work-related injuries.

### 3. *Florida*

In *Byrd v. Richardson–Greenshields Securities, Inc.,* 552 So.2d 1099 (Fla.1989), the Supreme Court of Florida answered in the negative the following certified question: "Whether the workers' compensation statute [of Florida] provides the exclusive remedy for a claim based on sexual harassment in the workplace." *Byrd,* 552 So.2d at 1100. In its opinion, the court noted that

> workers' compensation is directed essentially at compensating a worker for lost resources and earnings. This is a vastly different concern than is addressed by the sexual harassment laws. While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self esteem. *Workers' compensation addresses purely economic injury; sexual harassment laws are concerned with a much more intangible injury to personal rights. To the extent these injuries are separable, we believe that they both should be, and can be, enforced separately.*

*Id.* at 1104 (footnote omitted). (Emphasis added.)

The Florida Supreme Court therefore agrees with the Arkansas court in *Davis v. Dillmeier Enterprises, Inc., supra,* that physical injuries and nonphysical injuries resulting from disability discrimination can be enforced separately, the first under the Workers' Compensation Act, the second under the WVHRA.

### 4. *Louisiana*

In *Cox v. Glazer Steel Corporation,* 606 So.2d 518 (La.1992), plaintiff was not rehired because of a compensable injury. After having settled a worker's compensation claim for the physical injury, plaintiff filed a civil claim against his former employer for discrimina-tion against the handicapped under the Louisiana Civil Right Act for Handicapped Persons. The trial court dismissed the claim and the court of appeals affirmed "holding that the discrimination claim was as outgrowth of the industrial accident and thus barred by the exclusive remedy of workers' compensation." *Cox,* 606 So.2d at 520. The Louisiana Supreme Court reversed on the ground that the coverage of the Civil Rights Act is not within the scope of the workers' compensation law and is not barred by that law. *Id.* In a concurring opinion, two of the justices of the court stated that "plaintiff's cause of action for discrimination is not based on the employer's liability for the injury, but on the employer's liability for subsequent conduct that, although incidentally related to the on-the-job injury, gave rise to entirely separate liability under an entirely separate statute." *Id.* at 521.

### 5. *Maine*

In *King v. Bangor Federal Credit Union,* 568 A.2d 507 (Me.1989), plaintiff resigned from her job because her employer declined to accommodate a work-related disability. She obtained workers' compensation benefits and thereupon filed a claim against her former employer under Maine's Human Right Act. The employer argued the exclusivity of workers' compensation. The Supreme Judicial Court of Maine sustained her claim, recognizing that the state's Workers' Compensation Act and Human Rights Act "were created for very different purposes and the injuries recognized under those acts are markedly different." *Id.* at 508. The court reasoned that "[t]he injury that [plaintiff's] complaint seeks to redress under the Human Rights Act is the indignity of the loss of an employment opportunity because of her physical handicap. This is an injury distinct from the physical injury for which she was compensated and concerning which she signed a release under the Workers' Compensation Act." *Id.*

### 6. *Michigan*

In *Boscaglia v. Michigan Bell Telephone Company,* 420 Mich. 308, 362 N.W.2d 642 (1985), Boscaglia filed an action against her former employer alleging violations of Michigan's Fair Employment Practices Act and

Civil Rights Act. She claimed she was demoted as a result of sex discrimination. Various employment problems allegedly arose after her demotion, including an accusation by her supervisor of coming to work late. She ultimately sought psychiatric treatment and quit her job. She filed a claim for workers' compensation and was awarded benefits for mental and emotional disability during the pendency of her civil action. A second plaintiff, Pacheco, alleged various acts of discrimination against him by his employer, including a suspension, demotion, discharge, and various acts of derision and harassment. He claimed that the acts of discrimination stemmed from his Spanish–American heritage. He did not file a workers' compensation claim.

In response to what the court described as the "principal question" before it in the two cases, the court held that "the exclusive remedy provision of the workers' compensation act [does not bar] an action seeking recovery for physical, mental, or emotional injury resulting from an employer's violation of the fair employment practices act (FEPA) or the Michigan civil rights act." *Boscaglia*, 362 N.W.2d at 643. The court in its opinion noted that "[t]he evils at which the civil rights acts are aimed are different from those at which the workers' compensation act is directed," *Id.* at 315, 362 N.W.2d at 645.

The *Boscaglia* decision was cited by Justice Miller in his *Coffman* dissent as authority for his view that it was not possible " to ascribe [to the West Virginia Legislature] any legislative intent that employees handicapped as a result of occupational injuries were to be excluded from the coverage of the handicap discrimination law." *Coffman*, 182 W.Va. at 86, 386 S.E.2d at 14.

### 7. *Minnesota*

In *Karst v. F.C. Hayer Co., Inc.*, 447 N.W.2d 180 (Minn.1989), the Supreme Court of Minnesota ruled against an injured employee based upon its perception of the legislature's intent and the election of the plaintiff to recover workers' compensation benefits, which the court said barred his recovery under other theories. The Minnesota Supreme Court said that only one issue was presented to it in the case, namely, "whether the exclusive remedy provision of the Work-ers' Compensation Act precludes an action by a disabled individual against his former employer for disability discrimination under the Minnesota Human Rights Act where the individual becomes disabled as a result of work-related injuries and the former employer refuses to rehire the individual because of the disability." *Karst*, 447 N.W.2d at 181. The Court resolved the issue in the affirmative principally on the ground that it believed "the legislature intended the decision of whether or not to rehire an injured worker and the consequences flowing from that decision to be within the scope of the Workers' Compensation Act." *Id.* at 184. The Court concluded its opinion with the statement that "in light of the vital importance of the exclusivity provision to the workers' compensation system and in the absence of a clear legislative intent to impose the liability of the Human Rights Act in addition to that under the Workers' Compensation Act, we decline to interpret the Human Rights Act as applicable here." *Id.* at 186.

### 8. *Ohio*

In *Kerans v. Porter Paint Company*, 61 Ohio St.3d 486, 575 N.E.2d 428 (1991), the Ohio Supreme Court held that Ohio's workers' compensation statute is not the exclusive remedy for claims based upon sexual harassment in the workplace. Noting the scope and purpose of Ohio's workers' compensation statute does not differ from Florida's, the court cited, quoted, and relied upon the decision of the Florida Supreme Court in *Byrd v. Richardson–Greenshields Securities, Inc.*, 552 So.2d 1099 (Fla.1989). In so doing the court noted "workers' compensation is directed essentially at compensating a worker for lost resources and earnings. This is a vastly different concern than is addressed by the sexual harassment laws. While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and selfesteem. Workers' compensation addresses purely economic injury; sexual harassment laws are concerned with a much more intangible injury to personal rights." *Kerans*, 575 N.E.2d at 431, quoting *Byrd*, 552 So.2d at 1104.

### 9. *Rhode Island*

In *Folan v. State/Department of Children, Youth and Families*, 723 A.2d 287 (R.I.1999), plaintiff was sexually harassed in her workplace and was compensated by Rhode Island's workers' compensation system for a resulting occupational stress injury. She subsequently filed a civil complaint under the state's Fair .Employment Practices Act and the Civil Rights of People with Disabilities statutes. In holding for plaintiff, the Rhode Island Supreme Court concluded:

> that the Legislature did not intend the exclusivity provision of the Workers' Compensation Act to bar the independent statutory claims created by the FEPA or the CRA ... the exclusivity clause of the Workers' Compensation Act as interpreted by defendants could render the FEPA and the CRA nugatory and ineffective ... under our interpretation, the exclusivity clause does not bar a claim if to do so would frustrate a broad, fundamental public policy which fulfills paramount purposes, such as a claim under the FEPA or the CRA.

*Id.* at 291–92.

### 10. *Washington*

In *Reese v. Sears, Roebuck & Co.*, and *Beauchamp v. Columbia Lighting, Inc.*, 107 Wash.2d 563, 731 P.2d 497 (Wash.1987), *overruled on other grounds by, Phillips v. City of Seattle*, 111 Wash.2d 903, 766 P.2d 1099 (1989), two consolidated cases, Reese suffered a work-related foot injury for which he received workers' compensation benefits. After being injured, Reese sought to continue work "by performing Grade 12 clerical and light manual work." *Reese*, 731 P.2d at 499. Sears refused to make any accommodation for Reese's new handicap July 6, 2005 and refused to continue employing Reese absent a full medical release, which his physician could not give. Thereupon, Sears terminated Reese's employment. Reese thereupon brought an action for handicap discrimination under the state's Law Against Discrimination.

Beauchamp filed a workers' compensation claim for work-related chronic bronchitis. The claim was still in dispute at the time of the Supreme Court of Washington's decision in his civil action against Columbia. The civil action was based on Columbia's refusal to accommodate Beauchamp's need to wear a gas mask and its refusal to allow him to return to work.

Sears and Columbia defended the respective actions against them on the basis of the exclusivity provision of the state's workers' compensation law. The court in rejecting the defense stated:

> Harmonizing legislative acts is a traditional responsibility of this court. Even if an apparent conflict existed between [the state's workers' compensation statutes] and the Law Against Discrimination, we would be obliged to reconcile that conflict and give effect to both statutory schemes, if this could be achieved without distorting the statutory language. Here, however, there is no conflict between the two statutory schemes. Under [the state's workers' compensation statutes], appellant employees sought recovery for their out of pocket costs (lost wages, medical bills, disability allowance) attributed to a specifically defined physical injury or a disease that arose out of their employment.

In contrast, under the Law Against Discrimination appellant employees claim they were injured, not by the physical workplace injuries that gave rise to their respective disabilities, but by a particular employer action taken months after they became disabled. It is the *employer response* to the disabled worker that is at issue ... For purposes of the Law Against Discrimination, it does not matter how the handicap arose; only the employer's response to the handicap matters ... Inasmuch as there is no conflict, we need not choose *between* giving full effect to either the Law Against Discrimination or the [workers' compensation statutes'] exclusive remedy provision. *The Legislature's intent is upheld by protecting the integrity of both statutory schemes. No one is excluded from the protection of the Law Against Discrimination. Under [the workers' compensation statutes], employees will continue to receive the sure but limited remedy for their workplace inju-*

*ries, and employers will remain protected from all court actions arising out of those injuries.*

*Id.* at 502–03. (internal citations omitted). (Emphasis added.) The *Reese* decision was cited by Justice Miller in his *Coffman* dissent.

### 11. *Wisconsin*

In *Byers v. Labor and Industry Review Commission,* 208 Wis.2d 388, 561 N.W.2d 678 (1997), at the outset of its opinion, the Wisconsin Supreme Court stated:

> The sole issue presented is whether Wis. Stat. § 102.03(2), the exclusive remedy provision of the Worker's Compensation Act (Workers' Compensation Act), bars a claim under the Wisconsin Fair Employment Act (WFEA), prohibiting discrimination in employment, when the facts that are the basis for the discrimination claim might also support a worker's compensation claim. We answer this question in the negative, concluding that the legislature intended that the Workers' Compensation Act exclusive remedy provision does not bar a claimant whose claim is covered under the Workers' Compensation Act from pursuing a claim under the WFEA for discrimination in employment.

*Byers,* 561 N.W.2d at 679.

As have other courts, the Wisconsin court noted "[t]he purposes of the two statutes are very different. The Workers' Compensation Act focuses on the employee and his or her work-related injury while the WFEA focuses on employer conduct that undermines equal opportunity in the workplace." *Id.* at 682. Later in its opinion, the court made essentially the same point in quoting from the *Byrd* decision of the Florida Supreme Court and the *Boscaglia* decision of the Michigan Supreme Court. The Wisconsin court thereupon concluded that "that the legislature in-tended that the Workers' Compensation Act exclusive remedy provision does not bar a complainant whose claim is covered under the Workers' Compensation Act from pursuing a discrimination in employment claim under the WVEA." *Id.* at 686.

### E.

### Harmonizing the Policies Respecting Workers' Compensation and Human Rights

The State's Workers' Compensation Law, W. Va.Code Chapter 23, and The West Virginia Human Rights Act, W. Va.Code Chapter 5, Article 11, set forth two significant legislative public polices. We must therefore endeavor to uphold the Legislature's intent by protecting the integrity of both statutory schemes. " 'Consistency in statutes is of prime importance, and, in the absence of a showing to the contrary, all laws are presumed to be consistent with each other. Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions * * *' 50 Am.Jur., Statutes, Section 363 and citing 82 C.J.S., Statutes, § 365, as well as *State ex rel. Revercomb v. O'Brien,* 141 W.Va. 662, 91 S.E.2d 865; *State ex rel. Thompson v. Morton,* 140 W.Va. 207, 84 S.E.2d 791; *State v. Snyder,* 89 W.Va. 96, 108 S.E. 588; *Farmers' & Merchants' Bank of Reedsville v. Kingwood Nat. Bank,* 85 W.Va. 371, 101 S.E. 734." *State ex rel. Pinson v. Varney,* 142 W.Va. 105, 109–10, 96 S.E.2d 72, 75 (1956). The second sentence in *Pinson*'s quotation was quoted with approval in *State v. Williams,* 196 W.Va. 639, 641, 474 S.E.2d 569, 572 (1996), to which quoted sentence the *Williams* Court added the words "to give full force and effect to each, if possible." [10]

---

**10.** *See also Keatley v. Mercer County Board of Education,* 200 W.Va. 487, 495, 490 S.E.2d 306, 314, fn. 15 (1997)(quoting *Williams* ); *In re Sorsby,* 210 W.Va. 708, 713, 559 S.E.2d 45, 50 (W.Va. 2001)(Syl. Pt. 5, *Lawson v. County Comm'n,* 199 W.Va. 77, 483 S.E.2d 77 (1996)(per curiam) which stated " 'where two statutes are in apparent conflict, courts must, *if reasonably possible,* construe them so as to give effect to each' Sylla-bus Point 4, *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958).''); *Carvey v. West Virginia State Bd. of Educ.,* 206 W.Va. 720, 527 S.E.2d 831 (1999) (Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions). *Accord, Lawson v.*

Here, Messer's cause of action for discrimination is not based on her employer's liability for a compensable work-related injury within the meaning of the Workers' Compensation Act. Rather, it is based on Appellees' alleged subsequent discriminatory conduct that, although incidentally related to the compensable work-related injury, gives rise to an entirely separate liability under the WVHRA. Any apparent conflict between West Virginia's Workers' Compensation Act and the WVHRA that may arise can be harmonized by recognizing, as many courts have done, that the rights and remedies of the Acts are considerably different and serve to fulfill different purposes. Thus we hold that the first of the two Acts is directed at compensating an employee who has suffered an injury or disease in the course of and resulting from his/her employment and at shielding the employer from liability outside the workers' compensation system for such injury. The second is directed towards actions of an employer in discriminating against an employee because of his or her disability. Since the Acts seek to remedy two separate harms, physical injury and discrimination, no conflict exists between the two Acts and it would be inconsistent with the purposes of the West Virginia Human Rights Act, W. Va.Code § 5–11–1 et seq., to limit its applicability to physical—injury disabilities unrelated to work. The injury that Messer seeks to redress under the WVHRA is the indignity of the alleged discrimination against her because of her disability.

The interpretation which Appellees would attach to the exclusivity clause would render the WVHRA ineffective and useless to a large group of West Virginians who have compensable work-related injuries. Such an interpretation would frustrate a broad, fundamental public policy which fulfills paramount purposes and would effectively relegate one class of employee to an inferior status compared to another class of employee who have injuries or disabilities which are not work-related. Being enacted later in time to the Workers' Compensation Act, the WVHRA makes no distinction between classes of employees to which civil rights protection is extended. Had the Legislature desired to treat employees with work-related disabilities differently, it would have done so within the WVHRA. It did not do so. That the Workers' Compensation Act itself excludes from its immunities injuries caused by certain acts, including deliberate intent acts at W. Va.Code § 23–4–2 and discriminatory acts at W. Va.Code § 23–5A–1, et seq., provides a further measure of assurance that the Legislature intended employees such as Messer to be protected by both systems.[11]

Here, Messer has alleged essentially two separate types of injuries. To the extent that a worker's injuries are of the type cognizable under W. Va.Code § 23–4–1 for which workers' compensation benefits may be sought, including aggravations and physical and non-physical conditions which flow directly and uniquely from such injury, we find that the exclusivity provision of the Workers' Compensation Act prohibits recovery outside of the mechanisms set forth in the West Virginia Workers' Compensation Act. To the extent that a worker's injuries are directly and proximately caused by the unlawful discriminatory acts of his or her employer, and are of a type not otherwise recoverable under the Workers' Compensation Act, we hold that the exclusivity provision of the Workers' Compensation Act is inapplicable as the Legislature did not intend such injuries to fall within the types of injuries for which Workers' Compensation Act was established. Thus, while an aggravation or worsening of an employee's physical injury by the conduct of his/her employer may be compensable under and thus subject to, the exclusive remedy provided by the Workers' Compensation Act,

County Com'n. of Mercer County, 199 W.Va. 77, 483 S.E.2d 77 (1996); United Hosp. Center, Inc. v. Richardson, 757 F.2d 1445 (4th Cir.1985) ("Should there be some inconsistency between the two statutes, or sections of a single statute, courts, in construing the statutes, so far as possible, should seek to steer a 'middle course that vitiates neither provision but implements to the fullest extent possible the directives of each.'

Citizens to Save Spencer v. EPA, 600 F.2d 844, 871 (D.C.Cir.1979)'").

11. We encourage the Legislature to consider the exclusivity provision with respect to the WVHRA further. We believe that W. Va.Code § 23–5A–1, et seq., may provide a statutory vehicle to do so.

an employee's claim against an employer for violation of The West Virginia Human Rights Act and resulting non-physical injuries, such as mental and emotional distress and anguish, directly and proximately resulting from such violation and not associated with the physical injury or the aggravation or worsening thereof are not barred by the exclusivity provisions of the Workers Compensation Act, W. Va Code § 23–2–6 (2003) and –6a (1949). Such violation and the resulting nonphysical injuries are not within the scope of the Workers' Compensation Act. Rather, they are separate liabilities from the physical injury and were created by The West Virginia Human Rights Act, an entirely different statute from the Workers' Compensation Act with different policy objectives.[12]

## IV.

### CONCLUSION

For the reasons stated above, the circuit court's order of August 18, 2003, in its Civil Action No. 02-C-0635, is affirmed, in part, reversed, in part and remanded to the circuit court to allow it to proceed, consistent with this opinion, without being barred by the exclusivity provisions of the Workers' Compensation Act. This Court expresses no opinion as to whether Appellant's complaint states a cause of action against Appellees for violation of The West Virginia Human Rights Act.

**Affirmed, in part, Reversed, in part and Remanded.**

MAYNARD, Justice, dissenting.

Once again, the majority is chipping away at the immunity provided to employers by the Workers' Compensation Act. Ignoring the plain language of the exclusivity provisions of W.Va.Code §§ 23–2–6 and 23–2–6a, the majority has now determined that an employee can pursue both a worker's com-

pensation claim and a human rights claim for the same workplace injury. Because I believe that the statutory provisions of both the Workers' Compensation Act and the West Virginia Human Rights Act clearly establish that the sole recourse for the appellant to recover for her workplace injuries is the workers' compensation system, I dissent to the majority's decision in this case.

This Court has long held that, "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). W.Va. Code § 23–4–6 plainly states that,

Any employer subject to this chapter who subscribes and pays into the workers' compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided in this section *is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring,* after so subscribing or electing, and during any period in which the employer is not in default in the payment of the premiums or direct payments and has complied fully with all other provisions of this chapter.

(Emphasis added). In addition, W.Va.Code § 23–4–6a provides,

The immunity from liability set out in the preceding section shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.

The language of these statutes clearly bars the appellant's cause of action under the Human Rights Act for her workplace injury.

Furthermore, the equally clear and unambiguous language of the West Virginia Hu-

---

12. In so holding, we pause to recognize the wisdom reflected some seventeen years ago by Justice Miller in his dissent in *Coffman,* wherein he observed that "workers' compensation benefits relate to employee's injuries and have nothing to do with his status under the handicap law. This latter provision is designed to prevent discrimination against a person who has a handicap."

*Coffman,* 182 W.Va. at 85–86, 386 S.E.2d at 13–14. "Nor," he wrote, "is it possible to ascribe any legislative intent that employees handicapped as a result of occupational injuries were to be excluded from coverage of the handicap discrimination law." *Id.,* 182 W.Va. at 86, 386 S.E.2d at 14.

man Rights Act does not indicate any intent by the Legislature to preempt, repeal, or supercede the exclusivity provisions of the Workers' Compensation Act. This Court always presumes that the Legislature is aware of existing law and intends its legislative enactments to harmonize therewith. Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908). Since the Human Rights Act was enacted after the Workers' Compensation Act, it must be presumed that absent any language to the contrary, the Legislature did not intend to preempt the exclusivity provisions of the Workers' Compensation Act.

Instead of following the clear language of our Workers' Compensation Act and Human Rights Act as set forth above, the majority chose to look to other jurisdictions for guidance. The majority's reliance on what other courts have done in these types of cases was misplaced. Our laws applicable to this issue are unique to this State, and there is simply no basis for comparison with the statutes of other states.

The decision by the majority in this case paves the way for human rights claims to be filed in every instance where an employee suffers an aggravation and/or progression of his or her prior workplace injury. These employees will always allege that their injuries were made worse by their employer's failure to accommodate their disability that resulted from their previous injury. The end result will be more double recoveries for claimants or possibly triple recoveries if a deliberate intention claim is also filed. Whether a claimant could get around the requirements of W.Va.Code § 23–4–2(d)(2)(ii)(C) remains to be seen.

Upon reflection, I believe my earlier statement that the majority was "chipping away" at the immunity conferred to employers by the Workers' Compensation Act was incorrect. Employers have actually lost a sizeable chunk of that immunity as a result of the majority's decision in this case, and I fear an avalanche of cases will now be filed. As I noted in my dissent to *Arnazzi v. Quad/Graphics Inc.*, 218 W.Va. 36, 621 S.E.2d 705 (2005), the West Virginia disability machine is still well-oiled and running smoothly. Perhaps the West Virginia slogan "almost heaven" should be changed to "claimants' paradise." For these reasons, I respectfully dissent.